## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

**Docket Number(s):** _____22-320_____   **U.S. v. REYES-ARZATE**

**Motion For:** Dismissal of Appeal.

_____

_____

**Set forth below precise, complete statement of relief sought:**

The government requests that the appeal be dismissed.

_____

_____

_____

_____

**MOVING PARTY:** **APPELLEE**   **OPPOSING PARTY:** **APPELLANT**

☐ Plaintiff  ☐ Defendant

☐ Appellant/Petitioner  ☒ Appellee/Respondent

**MOVING PARTY:** Susan Corkery, AUSA   **OPPOSING PARTY:** Robin Christine Smith, Esq.

U.S. Attorney's Office   Law of Office of Robin Christine Smith, Esq., P.C.

271-A Cadman Plaza East Brooklyn, N.Y. 11201   802 B Street, San Rafael, CA 94901

(718) 254-6286; Susan.Corkery@usdoj.gov   Email: rcs@robinsmithesq.com; Tel: 415 726-8000

Court-Judge/Agency appealed from: The Honorable Brian M. Cogan, U.S.D.J., E.D.N.Y.

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain): _____

_____

Opposing counsel's position on motion:
☐ Unopposed  ☒ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☒ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency:

_____

_____

_____

Is oral argument on motion requested? ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☒ No If yes, enter date: _____

**Signature of Moving Attorney:**

_____/s/_____   **Date:** 4/28/2022   Service by: ☒ CM/ECF  ☐ Other [Attach proof of service]
**Susan Corkery**

**Form T-1080** (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------ x

                                DECLARATION IN SUPPORT OF
                                MOTION TO DISMISS APPEAL

USA v. REYES-ARZATE                   Docket No.  22-320

------------------------------ x

SUSAN CORKERY hereby declares the following under 28 U.S.C. § 1746:

1.    I am an Assistant United States Attorney for the Eastern District of New York.  The United States is the appellee in the above-captioned criminal appeal.  I make this declaration in support of the appellee's motion to dismiss the appeal.

2.    Defendant-Appellant Ivan Reyes-Arzate has filed a notice of appeal in the United States District Court for the Eastern District of New York (Cogan, J.), appealing his conviction, by a plea of guilty, for international cocaine conspiracy distribution, in violation of 21 U.S.C. § 963.

3.    On October 19, 2021, the defendant executed a plea agreement in which he agreed not to file an appeal or otherwise challenge

2

his conviction or sentence if the term of imprisonment imposed was 293 months or less.  (Exhibit 1, p. 3).

4.    On October 19, 2021, during his plea allocution, the defendant was specifically advised that he could not appeal if he were sentenced to 293 months' imprisonment or less, and he indicated that he understood this waiver provision.  (Exhibit 2, pp. 14-15).

5.    On February 9, 2022, Judge Cogan sentenced the defendant to 120 months' incarceration.  (Exhibit 3, p. 23; Exhibit 4, p. 2).

WHEREFORE, it is respectfully requested that the appellee's motion to dismiss the appeal be granted.

I declare under penalty of perjury that the foregoing is true and correct.


_____/s/_____
SUSAN CORKERY
Assistant U.S. Attorney

Executed on April 28, 2022
Brooklyn, New York

# EXHIBIT 1
**(Plea Agreement)**

ALB:PP/RCH
F. # #2019R01700/OCDETF#NY-NYE-876-Z

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

PLEA AGREEMENT

- against -

20 CR 030 (BMC)

IVAN REYES-ARZATE,

Defendant.

– – – – – – – – – – – – – – – – –X

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York (the "Office") and IVAN REYES-

ARZATE (the "defendant") agree to the following:

1.      The defendant will plead guilty to the lesser included offense of Count

One of the above-captioned indictment, charging a violation of 21 U.S.C. §§ 963,

960(b)(2)(B)(ii) and 959(d).  The count carries the following statutory penalties:

a.      Maximum term of imprisonment: 40 years
        (21 U.S.C. § 960(b)(2)(B)).

b.      Minimum term of imprisonment: 5 years
        (21 U.S.C. § 960(b)(2)(B)).

c.      Minimum supervised release term: 4 years, maximum supervised
        release term: life, to follow any term of imprisonment; if a
        condition of release is violated, the defendant may be sentenced to
        up to 4 years without credit for pre-release imprisonment or time
        previously served on post-release supervision
        (18 U.S.C. § 3583(e); 21 U.S.C. § 960(b(2)(B)).

d.      Maximum fine:  $5,000,000
        (21 U.S.C. § 960(b)(2)(B)).



e.    Restitution: N/A

f.    $100 special assessment
      (18 U.S.C. § 3013).

g.    Other penalty: criminal forfeiture, as set forth below in
      paragraphs 6 through 13.
      (21 U.S.C. §§ 853(a), 853(p), and 970).

2.    The defendant understands that although imposition of a sentence in

accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is

not mandatory, the Guidelines are advisory and the Court is required to consider any applicable

Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an

appropriate sentence in this case. The Office will advise the Court and the Probation Department

of information relevant to sentencing, including criminal activity engaged in by the defendant,

and such information may be used by the Court in determining the defendant's sentence. See 18

U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background,

character, and conduct of a person convicted of an offense which a court of the United States

may receive and consider for the purpose of imposing an appropriate sentence."). The Office

estimates the likely adjusted offense level under the Guidelines to be 40, which is predicated on

the following Guidelines calculation:

Base Offense Level (§§ 2D1.1(a)(5) & (c)(1)))                                      38

Plus:    Defendant Bribed or Attempted to Bribe Law Enforcement
Officer ((§ 2D1.1(b)(11))                                                         +2

Total:                                                                            40

If the defendant clearly demonstrates acceptance of responsibility, through allocution and

subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted,

pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 38 and a range of

2

imprisonment of 235 - 293 months, assuming that the defendant falls within Criminal History

Category I. Furthermore, if the defendant has accepted responsibility as described above, to the

satisfaction of the Office, and if the defendant pleads guilty on or before October 29, 2021 an

additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an

adjusted offense level of 37. This level carries a range of imprisonment of 210 - 262 months,

assuming that the defendant falls within Criminal History Category I. The defendant agrees that

he will not challenge the drug type and quantity set forth in the lab reports. The defendant

stipulates to the above Guidelines calculation. The defendant further stipulates and agrees that he

is responsible for a drug type and quantity of more than 450 kilograms of cocaine and waives

any right to a jury trial or Fatico hearing on this issue.

        3.      The Guidelines estimate set forth in paragraph 2 is not binding on the

Office, the Probation Department or the Court. If the Guidelines offense level advocated by the

Office, or determined by the Probation Department or the Court, is, for any reason, including an

error in the estimate, different from the estimate, the defendant will not be entitled to withdraw

the plea and the government will not be deemed to have breached this agreement.

        4.      The defendant agrees not to file an appeal or otherwise challenge, by

petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the

event that the Court imposes a term of imprisonment of 293 months or below. This waiver is

binding without regard to the sentencing analysis used by the Court. The defendant waives all

defenses based on the statute of limitations and venue with respect to any prosecution that is not

time-barred on the date that this agreement is signed in the event that (a) the defendant's

conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the

defendant's plea is later withdrawn. The defendant further waives the right to raise on appeal or

3

on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty

is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s).

Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the

defendant from raising a claim of ineffective assistance of counsel in an appropriate forum. The

defendant waives any right to additional disclosure from the government in connection with the

guilty plea. The defendant agrees that with respect to all charges referred to in paragraphs 1 and

5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C.

§ 3006A note, and will not file any claim under that law. The defendant agrees to pay the special

assessment by check payable to the Clerk of the Court at or before sentencing. The defendant

understands that he may be subject to removal as set forth in paragraph 14 below. Nevertheless,

the defendant affirms that he wants to plead guilty and to waive his right to appeal as set forth at

the beginning of this paragraph, even if the consequence is the defendant's automatic removal

from the United States.

5.      The Office agrees that:

      a.      no further criminal charges will be brought against the defendant
for conspiracy to distribute, and possess with the intent to distribute,
or conspiracy to import cocaine between September 2016 to
November 2016, it being understood that this agreement does not
bar the use of such conduct as a predicate act or as the basis for a
sentencing enhancement in a subsequent prosecution including, but
not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.,
and at the time of sentence, it will move to dismiss the remaining
counts of the Indictment with prejudice;

and, based upon information now known to the Office, it will

      b.      take no position concerning where within the Guidelines range
determined by the Court the sentence should fall; and

      c.      make no motion for an upward departure under the Sentencing
Guidelines.

4

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including but not limited to: (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraphs 5(a)-(c).

6. The defendant acknowledges that he obtained and/or acquired property that is subject to forfeiture as a result of his violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii) and 959(d), as alleged in the above-captioned indictment. The defendant consents to the entry of a forfeiture money judgment in the amount of two hundred ninety thousand dollars and zero cents ($290,000.00) (the "Forfeiture Money Judgment"). The defendant agrees that the amount of the Forfeiture Money Judgment and any payments toward the Forfeiture Money Judgment represent: (a) property constituting, or derived from, any proceeds obtained directly or indirectly as a result of his violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii) and 959(d); (b) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense; and/or (c) substitute asset, and thus are forfeitable to the United States pursuant to 21 U.S.C. §§ 853(a), 853(p) and 970, in any administrative and/or judicial (civil or criminal) proceeding(s) at the Office's exclusive discretion. The defendant consents to the entry of an Order of Forfeiture, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, imposing the Forfeiture Money Judgment.

7. All payments made by the defendant toward the Forfeiture Money Judgment shall be made by money order, certified check and/or official bank check, payable to

the "U.S. Marshals Service." The defendant shall cause said payments to be sent by overnight mail delivery to Assistant United States Attorney Claire S. Kedeshian, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201, with the criminal docket number noted on the face of the instrument. The defendant consents to the restraint of all payments made toward the Forfeiture Money Judgment. The defendant also waives all statutory deadlines, including but not limited to deadlines set forth in 18 U.S.C. § 983.

8.      If the defendant fails to pay any portion of the Forfeiture Money Judgment, the defendant consents to the forfeiture of any other property of his up to the amount of the unpaid Forfeiture Money Judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. Furthermore, pursuant to 21 U.S.C. § 853(p)(3), the defendant agrees to liquidate and repatriate to the United States from Mexico or any other place outside the United States, any assets he has may have any ownership right, title or interest in, in whole or in part, to satisfy the Forfeiture Money Judgment.

9.      The defendant agrees to fully assist the government in effectuating the payment of the Forfeiture Money Judgment, by among other things, executing any documents necessary to effectuate any transfer of title to the United States. The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

6

10.    The failure of the defendant to forfeit any monies and/or properties as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement.  Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the defendant.

11.    The defendant represents that he has disclosed all of his assets to the United States on the financial statement entitled "United States Department of Justice Financial Statement" (hereinafter, the "Financial Statement") and has provided a copy to Assistant United States Attorney Ryan Harris.  The defendant agrees that a failure to disclose all assets on the Financial Statement and to inform the government in writing of any material changes up until the time of sentencing constitutes a material breach of this agreement.  Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the defendant.  Should undisclosed assets which the defendant owns or in which the defendant has an interest be discovered, the defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets and agrees that said assets shall be forfeited to the United States pursuant to 21 U.S.C. §§ 853(a), 853(p) and 970, as: (a) property constituting, or derived from, any proceeds obtained directly or indirectly as the result of the defendant's violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii) and 959(d); and (b) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense; and/or (c) substitute assets.

12.    The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any monies and/or properties forfeited hereunder, including notice set forth in an indictment, information or administrative notice.  In addition, the defendant

7

knowingly and voluntarily waives his right, if any, to a jury trial on the entry of a Forfeiture

Money Judgment, and waives all constitutional, legal and equitable defenses to the forfeiture of

said monies and/or properties, including, but not limited to, any defenses based on principles of

double jeopardy, the Ex Post Facto clause of the Constitution, any applicable statute of

limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive

fines.

13.     The defendant agrees that the entry and payment of the Forfeiture Money

Judgment are not to be considered a payment of a fine, penalty, restitution loss amount, or any

income taxes that may be due, and shall survive bankruptcy.

14.     The defendant recognizes that pleading guilty may have consequences

with respect to the defendant's immigration status if the defendant is not a citizen of the United

States.  Under federal law, a broad range of crimes are removable offenses, including the offense

to which the defendant is pleading guilty.  Indeed, because the defendant is pleading guilty to a

drug trafficking offense, removal is presumptively mandatory.  Removal and other immigration

consequences are the subject of a separate proceeding, however, and the defendant understands

that no one, including the defendant's attorney or the District Court, can predict with certainty

the effect of the defendant's conviction on the defendant's immigration status.  The defendant

nevertheless affirms that the defendant wants to plead guilty regardless of any immigration

consequences that the defendant's plea may entail, even if the consequence is the defendant's

automatic removal from the United States.

15.     This agreement does not bind any federal, state, or local prosecuting

authority other than the Office, and does not prohibit the Office from initiating or prosecuting

any civil or administrative proceedings directly or indirectly involving the defendant.

8

16.     Apart from any written proffer agreements, if applicable, no promises,

agreements or conditions have been entered into by the parties other than those set forth in this

agreement and none will be entered into unless memorialized in writing and signed by all parties.

Apart from any written proffer agreements, if applicable, this agreement supersedes all prior

promises, agreements or conditions between the parties.  To become effective, this agreement

must be signed by all signatories listed below.


Dated: Brooklyn, New York
    *October 19*, 2021

                                       BREON PEACE
                                       United States Attorney
                                       Eastern District of New York

                By:

                                       Ryan C. Harris
                                       Philip Pilmar
                                       Assistant United States Attorney

                                       Approved by:

                                       Supervising Assistant U.S. Attorney


I have read the entire agreement and discussed it with my attorney.  I understand all of its terms
and am entering into it knowingly and voluntarily.


IVAN REYES ARZATE
Defendant

Approved by:

Mark DeMarco, Esq.
Counsel to Defendant

# EXHIBIT 2
### (Plea Minutes)

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    : 20-CR-00030(BMC)
                            :
                            :
                            :
       -against-             : United States Courthouse
                            : Brooklyn, New York
                            :
                            :
IVAN REYES-ARZATE,          : Tuesday, October 19, 2021
                            : 11:00 a.m.
          Defendant.       :
                            :

- - - - - - - - - - - - - X


TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES SENIOR DISTRICT JUDGE


A P P E A R A N C E S:

For the Government: JACQUELYN M. KASULIS, ESQ.
                  United States Attorney
                  Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201
                BY:   RYAN HARRIS, ESQ.
                   PHILIP NATHAN PILMAR, ESQ.
                   Assistant United States Attorney


 For the Defendant:   LAW OFFICES OF MARK S. DEMARCO
                   3867 East Tremont Avenue
                   Bronx, New York 10465
                BY:MARK STEVEN DEMARCO, ESQ.


Court Reporter:      VICTORIA A. TORRES BUTLER, CRR
                   225 Cadman Plaza East/Brooklyn, NY 11201
                   VButlerRPR@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

```
                        Proceedings                          2
```

1              (In open court.)

2              (Defendant enters the courtroom.)

3              (Judge BRIAN M. COGAN enters the courtroom.)

4         THE COURTROOM DEPUTY:  All rise.

5         THE COURT:  Good morning.

6         ALL:  Good morning, Your Honor.

7         THE COURT:  Have a seat, please.

8         THE COURTROOM DEPUTY:  <u>United States versus Ivan</u>

9    <u>Reyes-Arzate</u>, Docket Number 20-CR-30.

10             Counsel, please state your appearances for the

11   record, starting with Government.

12             MR. HARRIS:  Ryan Harris and Philip Pilmar for the

13   United States.

14             Good morning, Your Honor.

15             MR. PILMAR:  Good morning, Your Honor.

16             MR. DeMARCO:  Good morning, Your Honor.

17             Marc DeMarco for Ivan Reyes-Arzate.

18             THE COURT:  Good morning.

19             Good morning, Mr. Reyes-Arzate.

20             THE DEFENDANT:  Good morning, sir.

21             THE COURT:  Okay.

22             I understand the defendant wants to change his plea

23   to guilty as to Count 1; is that correct?

24             MR. DeMARCO:  That's correct, Your Honor.

25             THE COURT:  All right.

Proceedings                                                      3

1          I will note for the record we have a Spanish

2   interpreter doing simultaneous translation who has been

3   previously sworn.

4          Let me have the defendant sworn as well.

5          THE COURTROOM DEPUTY:  Please stand and raise your

6   right hand.

7   **IVAN REYES-ARZATE**,

8              having been first duly sworn, was examined and

9              testified as follows:

10          THE DEFENDANT:  I do.

11          THE COURTROOM DEPUTY:  You can be seated.

12          THE COURT:  How should I refer to the defendant,

13   Mr. Reyes-Arzate?

14          MR. DeMARCO:  I refer to him as Mr. Reyes,

15   Your Honor.

16          THE COURT:  Reyes?

17          MR. DeMARCO:  Yes.

18          THE COURT:  Okay.

19          Mr. Reyes, are you able to speak or understand any

20   English at all?

21          THE DEFENDANT:  A little bit.

22          THE COURT:  All right.

23          It is very important that you listen to the

24   interpreter and answer all of the questions that I am going to

25   ask you in Spanish, okay?

```
                         Proceedings                      4
```

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Okay.

3           Have you had any difficulty, Mr. Reyes,

4    communicating with your lawyer?

5           THE DEFENDANT:  No, sir.

6           THE COURT:  All right.

7           Mr. DeMarco, how have you communicated with the

8    defendant?

9           MR. DeMARCO:  Your Honor, on all but one occasion, I

10   have used a Spanish language interpreter.

11          THE COURT:  Okay.

12          Have you had the plea agreement translated for him?

13          MR. DeMARCO:  The plea agreement has been

14   translated, a written version has been provided to Mr. Reyes

15   and we have reviewed it with the assistance of a Spanish

16   interpreter several times.

17          THE COURT:  Okay.

18          Mr. Reyes, before I accept your guilty plea, I have

19   to ask you a number of questions to satisfy myself that it is

20   a valid plea and that you understand what you are doing.  If

21   you do not understand any of the questions I ask you, just let

22   me know and I will rephrase the question, okay?

23          THE DEFENDANT:  Very well, sir.

24          THE COURT:  All right.

25          You have the right to be represented by a lawyer at

Proceedings                                         5

1   every stage of these proceedings whether you are pleading

2   guilty, as you apparently want to do, or if you wanted to

3   change your mind and decide to go to trial.

4           Do you understand that you have a right to a lawyer

5   at all times?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  All right.

8           Would you confirm for me, please, that Mr. DeMarco

9   who is sitting next to you is, in fact, your lawyer.

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  If at any time you want to take a break

12  from these questions and talk to him privately, just let me

13  know and we will do that, okay?

14          THE DEFENDANT:  Very well, sir, thank you.

15          THE COURT:  All right.

16          Now you just swore to tell the truth.  That means

17  that if you were to answer any of my questions falsely, your

18  answers could later be used against you in a separate

19  prosecution for the crime of making a false statement or

20  perjury.  So, it is very important that you tell me the truth

21  at all times.

22          Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  All right.

25          Please tell me your full name.

Proceedings                                        6

1          THE DEFENDANT:  Ivan Reyes-Arzate.

2          THE COURT:  How old are you, sir?

3          THE DEFENDANT:  Forty-nine years old, sir.

4          THE COURT:  I know it is a little difficult, but I

5    need you to pull your mask up over your nose.  Okay.

6          What is the highest grade that you have completed in

7    school?

8          THE DEFENDANT:  I finished college, sir.

9          THE COURT:  All right.

10         Where was that?

11         THE DEFENDANT:  In Mexico.

12         THE COURT:  Which college in Mexico?

13         THE DEFENDANT:  It's called University in Sujendez.

14         THE COURT:  Okay.

15         As you sit here today, is your mind clear?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  You understand what is going on here.

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Are you presently or have you recently

20   been under the care of a doctor?

21         THE DEFENDANT:  No.

22         THE COURT:  Are you presently or have you recently

23   been under the care of a psychiatrist?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  In the last 24 hours have you taken any

Proceedings                                    7

1   kind of narcotic drug?

2            THE DEFENDANT:  No, not at all.

3            THE COURT:  In the last 24 hours, have you taken any

4   kind of medication?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  In the last 24 hours have you had any

7   kind of alcoholic beverage to drink?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Have you ever been hospitalized or

10  treated for any kind of mental illness?

11           THE DEFENDANT:  No, sir, never.

12           THE COURT:  Have you ever been either hospitalized

13  or treated for addiction to drugs or alcohol?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  All right.

16           Mr. DeMarco, have you discussed this matter with

17  your client?

18           MR. DeMARCO:  Yes, Your Honor.

19           THE COURT:  In your opinion, is he capable of

20  understanding the nature of these proceedings?

21           MR. DeMARCO:  Yes, he is.

22           THE COURT:  You do not need to stand, it is fine.

23           MR. DeMARCO:  I'm sorry.

24           THE COURT:  In your opinion, does he understand the

25  rights that he will be waiving by pleading guilty?

Proceedings                                           8

1          MR. DeMARCO:  Yes, Your Honor.

2          THE COURT:  Do you have any doubt at all as to his

3    competence to plead at this time?

4          MR. DeMARCO:  No.

5          THE COURT:  Have you advised him of the maximum

6    sentence and fine that could be imposed?

7          MR. DeMARCO:  Yes.

8          THE COURT:  Have you discussed with him the

9    operations of the sentencing guidelines?

10         MR. DeMARCO:  Yes.

11         THE COURT:  All right.

12         Mr. Reyes, have you had as much of an opportunity to

13   discuss this case with your lawyer as you feel you need?

14         THE DEFENDANT:  Yes, sir, I have had that.

15         THE COURT:  Are you fully satisfied with the

16   representation and advice that he has given you?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Have you received a copy of the

19   indictment; that is, the charging instrument in this case?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Have you discussed with Mr. DeMarco in

22   particular Count 1 of that indictment?  That is the one that

23   you are pleading guilty to.

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right.

Proceedings                                                           9

1              Just to summarize for you what Count 1 says, it says

2     that between September of 2016 and November of 2016,

3     approximately, that within the United States and elsewhere,

4     you, together with others, intentionally conspired to

5     distribute five kilograms or more of cocaine.

6              Do you understand that charge?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.

9              Now let me go over with you the rights that you are

10    going to be giving up if you continue to want to plead guilty.

11             The first and most important thing you need to

12    understand is that you do not have to plead guilty even if you

13    are guilty.  Under our legal system, the United States

14    Government has the burden of proving the guilt of a defendant

15    beyond a reasonable doubt.  If the Government cannot or does

16    not meet that burden of proof, the jury has the duty to find

17    the defendant not guilty even if the defendant is guilty.

18    What that means is that even if you are guilty, you have a

19    choice.  It is up to you to decide what to do; not your lawyer

20    and not anybody else.  You can go ahead and withdraw your

21    previously entered plea of not guilty and plead guilty as

22    apparently want to do or even now, you could tell me that you

23    want to stand on your not guilty plea and go to trial.

24             Do you understand that right now you have that

25    choice?

Proceedings                                                    10

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If you wanted to continue to plead not

3    guilty, then under the Constitution and laws of the

4    United States you would be entitled to a speedy and public

5    trial by jury with the assistance of your lawyer on the

6    charges contained in the indictment.  At that trial you would

7    be presumed innocent.  You would not have so prove that you

8    were innocent.  It would be the Government's burden to

9    overcome that presumption and prove you guilty by competent

10   evidence and beyond a reasonable doubt.  If the Government

11   were to fail at that, the jury would have the duty to find you

12   not guilty, but by pleading guilty you are giving up your

13   right to have the Government satisfy its burden of proving

14   that you are guilty beyond a reasonable doubt.

15          Do you understand that you are giving up that right?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  If you wanted to go to trial, then the

18   witnesses for the Government would have to come to court and

19   testify in your presence, and your lawyer would have the right

20   to cross-examine the witnesses for the Government, to object

21   to any evidence offered by the Government and to offer

22   evidence on your behalf.  You could also request the right to

23   compel the attendance of witnesses at your trial, but again,

24   by pleading guilty, you are giving up the right to confront

25   the witnesses who might testify against you at a trial.  You

VB        OCR        CRR

Proceedings                                                    11

1   are also giving up your right to offer evidence on your own

2   behalf and to raise any defense that is you might have.

3           Do you understand that you are giving up those

4   rights?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  If you went to trial, you would also

7   have the right to testify on your own behalf if you chose to

8   do so.  However, at a trial, you could not and would not be

9   required to testify.  Under the Constitution of the

10  United States a defendant in a criminal case cannot be forced

11  to take the witness stand at his trial and say anything that

12  could be used against him to show that he is guilty of the

13  crime with which he has been charged.

14          What that means is, if you decided you wanted to go

15  to trial but you did not want to testify, I would tell the

16  jury that they could not hold that choice against you.  They

17  could not even discuss it in any way.  That is called your

18  right against self-incrimination.  However, by pleading guilty

19  you are admitting your guilt and you are giving up your right

20  against self-incrimination.

21          Do you understand that you are giving up that right?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  If you continue to want to plead guilty,

24  I am going to ask you questions about what you did in order to

25  satisfy myself that you are, in fact, guilty of the charge to

Proceedings                                                    12

1   which you are pleading guilty and you will have to answer my

2   questions truthfully and acknowledge your guilt.  Remember,

3   you just took an oath to answer all the questions that I ask

4   you truthfully.  Once you have pled guilty and I accept your

5   guilty plea, you will be giving up your Constitutional right

6   to a trial and all of the other rights that I have just

7   discussed.  There will be no further trial of any kind.  I

8   will simply enter a judgment of guilty on the basis of your

9   guilty plea.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  If you wanted to go to trial and you

13  were convicted by a jury, you have the right to ask the Court

14  of Appeals to review the legality of all the proceedings that

15  led up to your conviction, but by entering a guilty plea you

16  are substituting your own words for the jury's verdict and

17  when you do that, you give up your right to appeal or to

18  challenge your conviction or the finding of guilt against you.

19          Do you understand that you are giving up that right

20  to appeal?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Are you willing to give up your right to

23  a trial and the other rights that I have just discussed with

24  you?

25          THE DEFENDANT:  Yes, sir.

VB       OCR       CRR

Proceedings                    13

1          THE COURT:  All right.

2          I have been given a copy of a -- actually, I have

3    been given the original, I think, of a plea agreement and I

4    just want to confirm with Mr. Reyes that it is, in fact, his

5    signature on this agreement.  I see the Government has signed

6    it and Mr. DeMarco has signed it.

7          I am going to ask my deputy to just show him his

8    signature and confirm for me whether that is, in fact, his

9    signature.

10          (Pause in the proceedings.)

11          THE DEFENDANT:  Yes, yes, it is.

12          THE COURT:  All right, we have marked that as

13   Government's Exhibit 1.

14          (Government's Exhibit 1 received in evidence.)

15          THE COURT:  Mr. Reyes, have you read this written

16   plea agreement?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Have you had it translated for you into

19   Spanish?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.

22          Have you reviewed it carefully with your attorney?

23          THE DEFENDANT:  Yes.

24          THE COURT:  You understand its terms.

25          THE DEFENDANT:  Yes, sir.

Proceedings                                              14

1          THE COURT:  Does the written plea agreement

2    accurately represent the entire understanding or agreement

3    that you have with the United States Government?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.

6          Mr. DeMarco, you have read and reviewed the plea

7    agreement.

8          MR. DeMARCO:  Yes Judge.

9          THE COURT:  Does it reflect the entire agreement

10   that your client has with the Government?

11         MR. DeMARCO:  Yes.

12         THE COURT:  All right.

13         A few minutes ago, Mr. Reyes, I told you that by

14   proceeding, you are giving up your right to appeal your

15   conviction.  Under other circumstances you could still appeal

16   your sentence if you feel the sentence was too high.  However,

17   under this particular plea agreement you have waived your

18   right to appeal whatever sentence I apply to you as long as I

19   sentence you to 293 months custody or less.  So that if I

20   sentence you to more than 293 months custody, you will be able

21   to appeal that sentence and say there is something wrong with

22   it or it is too high or whatever else you wanted to say.  But

23   if I sentence you to 293 months or less, you will not be able

24   to appeal your sentence.

25         Do you understand that?

VB      OCR      CRR

Proceedings                                    15

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  All right.

3        Now let me discuss with you how I am going to go

4   about deciding what the right sentence is for you.

5        First, we start with the statute.  That statute,

6   that is the law, says that the offense to which you are guilty

7   of violating carries a maximum of up to 40 years custody.  It

8   carries a mandatory minimum of five years custody.  So your

9   sentence could be as low as five years, it could be as high as

10  40 years.

11       In addition, there is a minimum supervised release

12  term of four years and that can be that can go as high as

13  life.  So supervised release will be somewhere between four

14  years and life.

15       Supervised release refers to a series of terms and

16  conditions that are placed upon you when you are released from

17  custody such as not entering this country illegally or

18  cooperating with the Probation Department.  There are many

19  conditions to supervised release.  If you were to violate any

20  of those conditions, you could be returned to custody,

21  returned to prison, for up to four years and if that happened,

22  you would not get any credit for time that you had already

23  served.  Do you understand that?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  All right.

Proceedings                                16

1          Let me ask the Government, the maximum fine under

2   this statute is $5,000?

3          MR. HARRIS:  $5 million, Your Honor.

4          THE COURT:  $5 million, all right.

5          In addition, Mr. Reyes, I could impose a fine on you

6   of anywhere up to $5 million.

7          Is restitution going to be an element here?

8          MR. HARRIS:  No, Your Honor.

9          THE COURT:  Okay.

10         I will, Mr. Reyes, impose what we call a $100

11  special assessment on you.

12         In addition, I think I have already signed -- and if

13  I have not, I will -- what we call a forfeiture money judgment

14  in the amount of $290,000.

15         In addition to that, the statute provides that after

16  you have served your custody -- that is, not before, but after

17  you have served whatever custodial term I impose -- you will

18  be removed and returned to Mexico.

19         Do you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.

22         Now the question is, since I have identified for you

23  that the sentence will be somewhere between five years and

24  40 years of custody, how am I going to decide what the right

25  amount of time is?  The starting point is what we call the

VB        OCR        CRR

Proceedings                                                  17

1    Sentencing Guidelines.  What the guidelines do is they take

2    the nature of your crime, they take any criminal history that

3    you have previously had and they come out with a chart to plot

4    the recommended amount of time that I should sentence you to.

5    Once that initial range is calculated, there are other

6    provisions in the guidelines that might require me to move

7    that range down or to move that range up.  While those

8    guidelines are advisory -- that is, I do not have to be bound

9    by them -- I still have to consider them.

10            In addition, these advisory guidelines are only one

11   factor for me to consider in determining the appropriate

12   sentence.  The statute sets forth a number of other factors

13   that I have to consider against all the facts and

14   circumstances of this case and all of the facts and

15   circumstances relating to you.  When I do that, I may find

16   that what we call a nonguidelines sentence is appropriate.

17            A nonguidelines sentence is a stents that is outside

18   of the guideline range.  It might be higher than the guideline

19   range, it might be lower than the guideline range.  The bottom

20   line, and what I need you to understand today, is that until

21   the date of sentencing when I get a Pre-Sentence Investigation

22   Report about you and I hear from you and Mr. DeMarco and the

23   Government, you are not going to know with any certainty what

24   the guidelines will be.  You are not going to know with any

25   certainty whether there are adjustments that can be made to

Proceedings                    18

1   those guidelines and you are not going to know with any

2   certainty whether I might impose a nonguidelines sentence

3   which again, could be higher or lower than the guidelines.  In

4   short, you are not going to know today what your sentence will

5   be and you are not going to be able to withdraw your guilty

6   plea later if you do not like the sentence.

7             Do you understand that?

8             THE DEFENDANT:  Yes, sir.

9             THE COURT:  All right.

10            While the guidelines are merely advisory, I want to

11   ask the attorneys to give you their estimate of what they

12   think the guidelines are likely to say based on the facts

13   available to them now.  Keep in mind that this is just an

14   estimate, a guess.  And, it could be wrong.

15            What is the Government's guideline estimate?

16            MR. HARRIS:  Your Honor, the Government estimates a

17   guidelines range of 210 to 262 months.  That's based on an

18   adjusted offense level under the guidelines of 37 and that the

19   defendant falls in Criminal History Category I.

20            I would also note that the plea agreement provides

21   the defendant stipulates to that guidelines range.

22            THE COURT:  All right.

23            So, Mr. Reyes, do you understand that that

24   guideline, while it binds you, it does not bind the

25   Government, it does not bind the Probation Department and it

Proceedings                                              19

1   does not bind me.

2              Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  You also understand that if the estimate

5   is wrong and you are sentenced to more time than the estimate,

6   you will not be permitted to withdraw your guilty plea.

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.

9              Do you have any questions you want to ask me about

10  this charge that you are pleading guilty to or your rights, or

11  anything else relating to this matter?

12             THE DEFENDANT:  No, no, sir.

13             THE COURT:  All right.

14             Are you ready to plead?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Mr. DeMarco, do you know of any reason

17  why he should not plead guilty to Count 1?

18             MR. DeMARCO:  No, Your Honor.

19             THE COURT:  Are you aware of any legal defense to

20  that charge?

21             MR. DeMARCO:  No.

22             THE COURT:  All right.

23             Mr. Reyes, what is your plea to Count 1; guilty or

24  not guilty?

25             THE DEFENDANT:  Guilty, sir.

Proceedings                    20

1      THE COURT:  Are you pleading guilty voluntarily and
2 of your own free will?
3      THE DEFENDANT:  Yes, sir.
4      THE COURT:  Has anyone threatened or forced you to
5 plead guilty?
6      THE DEFENDANT:  No, sir.
7      THE COURT:  Other than the promises contained in the
8 written plea agreement, has anyone made any other promises to
9 get you to plead guilty?
10      THE DEFENDANT:  No, not at all, sir.
11      THE COURT:  Has anyone made any promise to you as to
12 what your final sentence is going to be?
13      THE DEFENDANT:  No, sir.
14      THE COURT:  All right.
15      Mr. Reyes, please tell me what you did that makes
16 you guilty of this crime.
17      THE DEFENDANT:  In or around September and
18 November of 2016, in my own native country Mexico, while I was
19 a member of the Mexican law enforcement, and in exchange for
20 money, I agreed to provide to a drug trafficking organization
21 information that would probably facilitate the distribution of
22 cocaine.  And I was aware that this was a crime and that
23 cocaine is a harmful product.
24      THE COURT:  Were you aware at that point the cocaine
25 or at least part of the cocaine was going to be sent or was

VB      OCR      CRR

Proceedings                                                21

1   intended to be sent into the United States?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  All right.

4            There is a quantity stipulation here as well, right?

5   What is the quantity?

6            MR. HARRIS:  Yes, Your Honor, and just to clarify.

7   The defendant is pleading guilty to the lesser included

8   offense of Count 1.

9            THE COURT:  Yes.

10           MR. HARRIS:  So the quantity is at least one

11  kilogram of cocaine.

12           THE COURT:  Okay.

13           Do you understand that, Mr. Reyes?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.

16           Is there a venue requirement that we need to cover?

17           MR. HARRIS:  Your Honor, the Government would

18  proffer that the drug trafficking organization that the

19  defendant was assisting sent drugs, cocaine, during the

20  relevant time period to the Eastern District of New York and I

21  believe the defendant is prepared to stipulate to that fact.

22           MR. DeMARCO:  That's correct, Your Honor.

23           THE COURT:  All right.

24           Do I need to get that from the defendant now that

25  Counsel has stipulated?

VB        OCR        CRR

Proceedings                                    22

1          MR. HARRIS:  I believe if Counsel's willing to

2    stipulate, then the Government does not require it.

3          THE COURT:  Okay.

4          Is there anything else I need to ask him from the

5    Government's perspective?

6          MR. HARRIS:  No, Your Honor.  Thank you.

7          THE COURT:  Based on the information given to me I

8    find that the defendant is acting volume temporarily, that he

9    understands his rights and the consequences of his plea and

10   that there was a factual basis for the plea.

11         I, therefore, accept the plea of guilty as to

12   Count 1.

13         Let's set a tentative sentencing date out about

14   90 days.

15         THE COURTROOM DEPUTY:  January 27th at 11:00 a.m.

16         MR. DeMARCO:  Your Honor, I'm sorry.

17         THE COURT:  It's okay.

18         MR. DeMARCO:  I am scheduled to start a trial on

19   January 10th.  That trial is in the Middle District of

20   Pennsylvania and it's estimated to be about six weeks in

21   Langley.  Is there any chance we can do it before?

22         THE COURT:  There is a chance.  I think it is

23   unlikely that we will both get the Pre-Sentence Investigation

24   Report and sentencing memoranda in advance enough to do it,

25   but we can try.  And if we do not, then we can move it until

Proceedings                                    23

1    after your trial.

2            MR. DeMARCO:  I don't think the Pre-Sentence

3    Investigation Report by Probation will take that long

4    considering Mr. Reyes's background.  And there is a PSR

5    presently in existence from the prior case.

6            THE COURT:  Okay.

7            So what is the last date you are comfortable with

8    without running into your trial.

9            MR. DeMARCO:  Thursday, January 6th if the Court is

10   available?

11           THE COURT:  Can we do that, Melonie?

12           THE COURTROOM DEPUTY:  Yes, January 6th at

13   11:45 a.m.

14           THE COURT:  How does that work for the Government?

15           MR. HARRIS:  That's fine for the Government, thank

16   you, Your Honor.

17           THE COURT:  All right, yes, good.  January 6th, we

18   will proceed with sentencing if we are at all able to.  If

19   not, we will adjourn it to a subsequent date.

20           MR. DeMARCO:  Thank you, Your Honor.

21           THE COURT:  Is there anything further?

22           ALL:  No, Your Honor, thank you.

23           THE COURT:  We are adjourned.

24           (Matter concluded.)

25                        ooo0ooo

# EXHIBIT 3
**(Sentencing Minutes)**

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        20-CR-30(BMC)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5          -versus-                     February 09, 2022
                                        10:45 a.m.
6    IVAN REYES-ARZATE,

7          Defendant.

8    ------------------------------x

9          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
                 BEFORE THE HONORABLE BRIAN M. COGAN
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  PHILIP PILMAR, ESQ.
                                   RYAN C. HARRIS, ESQ.
15                            Assistant United States Attorneys

16   For the Defendant:      LAW OFFICES OF MARK S. DEMARCO
                              3867 East Tremont Avenue
17                            Bronx, New York 10465
                              BY:  MARK S. DEMARCO, ESQ.

18

19   Also Present:           FRANK NIKOLAIDIS, Probation

20

     Court Reporter:         Rivka Teich, CSR, RPR, RMR, FCRR
21                           Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com

22

     Proceedings recorded by mechanical stenography.  Transcript
23   produced by computer-aided transcription.

24

25

2

SENTENCE

1           (In open court.)

2           THE COURTROOM DEPUTY:  All rise.

3           United States vs. Ivan Reyes, docket 20CR370.

4           Counsel, please state your appearances, starting

5   with the Government.

6           MR. PILMAR:  Good morning, your Honor.  Phillip

7   Pilmar and Ryan Harris for the Government.

8           MR. DE MARCO:  For Mr. Reyes, Mark de Marco.  Good

9   morning.

10          THE COURT:  Good morning.

11          Good morning, Mr. Reyes.

12          MR. NIKOLAIDIS:  Frank Nikolaidis from probation.

13          THE COURT:  We have an interpreter who is

14  interpreting for the defendant, who has been previously sworn.

15          We're proceeding with the sentencing today.  Let me

16  start by reviewing the documents that I have reviewed in

17  preparing for this sentencing.  I'd like defense counsel to

18  confirm for me and then I'd like the defendant to confirm for

19  me that he has reviewed all of these documents; they've been

20  explained to him in Spanish so that he understands everything

21  that I've relied upon.

22          First, I have the presentence investigation report

23  of December 22nd.

24          Then I have a sentencing memo with many exhibits

25  from Mr. De Marco of November 25th, mostly character

3

SENTENCE

1    references, but some other things too.

2           And then I have the Government's sentencing

3    memorandum of February 1st.

4           Anything else I should be looking at?

5           MR. DE MARCO:  No, your Honor, not from defense.

6           MR. PILMAR:  No, your Honor.

7           THE COURT:  Okay.

8           And can you confirm for me, Mr. De Marco, that you

9    have gone over with your client all of those documents?

10          MR. DE MARCO:  I have, your Honor.

11          THE COURT:  How has he been able to understand them,

12   since they are in English?

13          MR. DE MARCO:  With the aid of an official

14   Spanish-speaking interpreter provided by the court.

15          THE COURT:  Mr. Reyes, you're familiar with all the

16   documents that I've just recited?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  All right.  Thank you.

19          Okay.  With regard to the facts that will control

20   the sentencing proceeding, I don't think there's any dispute

21   about the description of the offense or the offender

22   characteristics in the PSR.  Am I right about that?

23          MR. DE MARCO:  Yes, your Honor.

24          MR. PILMAR:  Yes, your Honor.

25          THE COURT:  I will adopt those portions of sections

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

4

SENTENCE

1    A and C of the PSR as described, the offense and the offender

2    characteristics, as my findings of fact for purposes of this

3    sentencing.

4            Now, also, with regard to the sentencing guidelines,

5    which are, of course, merely advisory and only one factor for

6    me to consider in determining the appropriate sentence, I

7    think we're in agreement that we're talking about an offense

8    level of 39, criminal history category of 1, and therefore a

9    sentence of 262 to 327 months.  That's the guideline range.

10           Does everybody agree with that?

11           MR. DE MARCO:  Yes, your Honor.

12           MR. PILMAR:  Yes, your Honor.

13           THE COURT:  That's my finding on the guidelines.

14           Let me then hear from the parties as to the

15    application of all of the sentencing factors.

16           I'll start with you, Mr. De Marco.

17           MR. DE MARCO:  Thank you, your Honor.

18           May I remain seated?

19           THE COURT:  Wherever you're comfortable.

20           MR. DE MARCO:  Thank you.  And can I take the mask

21    off?

22           THE COURT:  As far as I'm concerned, you may.  I

23    will not enforce the mask rule.

24           MR. DE MARCO:  Thank you, your Honor.

25           Your Honor, on March 27th of 2017, almost 59 months

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

5

SENTENCE

1   ago, Mr. Reyes said goodbye to his friends, said goodbye to

2   his family in Mexico City, and came to the United States

3   voluntarily to surrender to the federal authorities in this

4   country.  Having been a high-ranking law enforcement agent in

5   Mexico, Mr. Reyes knew that there was a good chance that he

6   would not be seeing those people for a substantial period of

7   time thereafter.  He didn't flee.  He didn't try to hide out

8   in Mexico.  He came to the United States to accept

9   responsibility for the crimes that he knew he would soon be

10  charged with.  He came to the United States to pay the price

11  for these crimes, to accept his responsibility, and to show

12  his remorse for what he had done.

13          While he was aware at the time that there was a very

14  good chance he wouldn't see his friends and family for a

15  substantial period of time, what he didn't know was the

16  following:  In those 59 months, he didn't know that in March

17  of 2018, his father would pass away and he would be unable to

18  attend the funeral.  He didn't know that his girlfriend of

19  many years, seven or eight years, would leave him and take all

20  his personal belongings.  He didn't know that she would --

21  withdrawn.

22          He didn't know that all of his assets, everything

23  that he had spent a lifetime of accumulating legally, would be

24  lost.  One home that he purchased was sold to pay for his

25  attorney's fees in Illinois.  The second home that he owned,

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

6

SENTENCE

1    he had given power of attorney to make transactions with to

2    his girlfriend, with whom he hasn't spoken to in over two

3    years.  He doesn't know where she is.  He doesn't know what,

4    if anything, she has done with the property.  He hasn't spoken

5    to her.  Mr. Reyes presumes that the property that she had

6    power of attorney over has been sold by her and used for her

7    benefit.

8           When he left Mexico in 2017, his son Ivan was 18,

9    his son Axel was 16, his father was alive, and he hasn't seen

10   any of those individuals since.  He didn't realize he would

11   miss almost five years of their lives and, most importantly,

12   his father's funeral.

13          But most importantly, your Honor, Mr. Reyes, a once

14   proud, highly respected member of the Mexican law enforcement

15   community who earned so much through hard work and dedication,

16   who did so much to obtain the high-ranking status that he did,

17   the most difficult of that 59 months has been the shame, the

18   embarrassment, and the humiliation not only brought upon

19   himself, but onto his family as well, your Honor.

20          Your Honor, today Mr. Reyes stands before this Court

21   a man who has lost just about everything with the exception of

22   his mother and his two sons.  During my representation, there

23   were times where he appeared to be a broken man.  But the

24   support of his children and his mother has kept him moving

25   forward.

7

SENTENCE

1          In that same 59 months of detention, Mr. Reyes has

2    been incarcerated often side by side with some of the very

3    same people who he investigated, arrested, and helped to

4    convict:  High-level members of Mexican drug cartels, drug

5    traffickers, and people like that.  Mr. Reyes, for that 59

6    months, your Honor, that been in jail alongside some of the

7    targets of his investigations, alongside many, many people who

8    really don't like police officers in a prison setting, which

9    makes Mr. Reyes so much more vulnerable.  And he has been

10   approached on several occasions by inmates questioning his law

11   enforcement background, but he has managed with his reason,

12   with his intelligence to survive on a daily basis.

13          Now, he has been approached with this book, which I

14   referenced in my sentencing memorandum.  It's translated "The

15   Trader."  And it's widely disseminated in the BOP, and he's

16   mentioned my name in this book as a former high-ranking member

17   of law enforcement.  He has been confronted with this book.

18   He has been targeted because of this book.  And the press

19   accounts, several of which I submitted to this Court, not only

20   write about his law enforcement background, but suggest,

21   rumor, and even gossip that he's a cooperating witness for the

22   United States Government.  He has been approached about that

23   too, your Honor.

24          So, your Honor, for me having done this for several

25   years, there is no more vulnerable inmate in the federal

8

SENTENCE

1  prison system than a cooperator who just so happens to be

2  prior law enforcement.  Fifty-nine months of incarceration,

3  Mr. Reyes has been experiencing this vulnerability.

4          Now, as your Honor knows, and I would be remiss to

5  omit, he has also for the past two years been incarcerated

6  during the COVID pandemic.  So that has been almost continuous

7  lockdown, lack of programming, minimal contact socially with

8  his family even by phone and computer, minimal contact with

9  the outside world, fear, emotional concern that he would

10  contract this disease at the age of 49 with a history of

11  asthma and perhaps never see his mother and children again,

12  the fear that he would die in a federal prison in the United

13  States during that detention.

14          Your Honor, I don't sit here and Mr. Reyes does not

15  sit here excusing his conduct.  The crimes that he committed

16  that have resulted in his 59 months' incarceration thus far

17  are inexcusable.  But Mr. Reyes acknowledges that, and he has

18  accepted responsibility for those actions and he is

19  remorseful.

20          The point I'm trying to make, your Honor, is that

21  Mr. Reyes has been sufficiently punished.  As far as specific

22  deterrence, there is no way Mr. Reyes would ever commit a

23  crime like this again.  His main focus upon release from

24  prison will be to try to rebuild his life.  He's down; he's

25  not broken.  He has family awaiting him in Mexico.  He has the

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

9

SENTENCE

1   support of his mother and his two sons.  And his plan is to

2   return to Mexico, first live with his mother, try to get back

3   on his feet, and rebuild his life.

4          Your Honor, he has been sufficiently punished.

5   Apart from the economic and professional loss that he has

6   sustained in that 59-month time, what price can a person put

7   on restoring someone's self-respect and pride?

8          I'm going to ask that your Honor consider imposing

9   the mandatory minimum sentence of 60 months, which is five

10  years, nunc pro tunc or with credit for the 59 months that he

11  has served thus far.

12         Thank you.

13         THE COURT:  Thank you.

14         Mr. Reyes, is there anything that would you like to

15  say?

16         THE DEFENDANT:  Yes, sir.

17         As Mr. De Marco already mentioned, I believe that I

18  am a man who does not run away from his responsibilities.  The

19  proof of this is that when I found out about my accusations

20  that I had against me five years ago, and despite of the legal

21  recommendations to not do it, I made the decision of getting

22  onto a plane and coming to this country to face this

23  situation.  I said goodbye to my family, to my children, my

24  parents, my wife without knowing when I would be able to see

25  them again, knowing that perhaps coming here was not the best

SENTENCE

1  option, but firmly believing that it was the correct thing to

2  do.

3          As Mr. De Marco mentioned, I was never able to see

4  my father again.

5          I know that the scourge of drugs cause a lot of pain

6  to a lot of people, and I profoundly lament whatever pain was

7  caused by my actions.  I offer a sincere apology to all of

8  those who have been affected directly or indirectly by my

9  actions.  I also want to apologize to my family, my mother, my

10  wife, my children for the suffering that I caused them and at

11  the same time to thank them for their support and their

12  unconditional love.

13          I know that you are well informed about what is

14  going on at the MDC and the MCC, so I will only say that it

15  has been a physical and mental challenge.  Nevertheless, the

16  most difficult thing that I have faced was the absence of my

17  family.  Right now I only expect the opportunity to be able to

18  hug them again, and whatever the decision that you take is, I

19  will continue to believe the same thing.  Maybe coming here

20  perhaps did not appear as the best option, but undoubtedly it

21  was the right thing.

22          Thank you, Judge.

23          THE COURT:  Thank you, Mr. Reyes.

24          I'll hear from the Government.

25          MR. PILMAR:  Thank you, your Honor.

SENTENCE

1          I won't repeat our sentencing memo.  I just want to

2    make a couple of points and then respond to two points that

3    Mr. De Marco made.

4          First, the conduct here is, as defense acknowledges,

5    unquestionably serious.  The defendant received a significant

6    cash bribe from a drug cartel in exchange for providing

7    information and assisting the cartel.

8          What I think is important to highlight about that is

9    that the defendant was not just a police officer in Mexico,

10   but a high-ranking one in the vetted unit, which are the units

11   of Mexican law enforcement officers who work directly with

12   U.S. law enforcement officers in order to go after these drug

13   cartels.  The whole point of those units is to make sure that

14   there is no corruption, because U.S. law enforcement cannot

15   operate in Mexico or other foreign countries to combat these

16   drug cartels if they cannot trust the people they work

17   alongside with on a day-to-day basis in Mexican law

18   enforcement.  The defendant was one of those people, and

19   instead of working with U.S. law enforcement and working with

20   Mexican law enforcement to protect the people of both of those

21   countries, he accepted a bribe from a significant drug cartel.

22         The second point I want to make is about general

23   deterrence, your Honor.  As the Court is aware from this case

24   and others, it is a significant problem of police officers and

25   law enforcement officers in Mexico receiving bribes to help

SENTENCE

1  these drug cartels, import massive quantities of drugs into

2  the United States.  And these law enforcement officers allow

3  the cartels to operate in Mexico.

4        There needs to be a message sent that the United

5  States Government and United States law enforcement will go

6  after people, including law enforcement officers who take

7  bribes to assist these cartels in sending such a large

8  quantity of drugs into this country.

9        On the other hand, as your Honor sees, we

10 recommended a below-guideline sentence of ten years.  And

11 there's two reasons for that, your Honor.

12       The first is that obviously the drug quantity drives

13 the guidelines calculation in this case, and while that is

14 always a useful metric to understand the significance of the

15 cartel that the defendant worked with, it does not fully

16 encapsulate the conduct in this case for a couple of reasons,

17 one of them being that the defendant was only working with

18 this cartel for a limited period of time.  He received the

19 bribe.  He had the meeting.  He gave the Information.

20       I will note, though, that the reason he only worked

21 with them for a limited period of time is not because he

22 withdrew from the conspiracy; it's because he was fired from

23 the vetted unit shortly thereafter.  But it is true that his

24 conduct on behalf of this cartel was for a short period of

25 time.

13

SENTENCE

1          THE COURT:  Was he fired for taking the bribe?

2          MR. PILMAR:  Yes, your Honor.

3          The second reason the Government recommended ten

4   years is because we acknowledge that the defendant was

5   incarcerated in connection with his case in the Northern

6   District of Illinois for related conduct, but we believe that

7   ten additional years is necessary for his significant conduct.

8   But we do recognize that the Court can take into account the

9   fact that he had related conduct and was incarcerated.

10          But I do want to respond to Mr. De Marco on that

11   point.  He said that the Court should go back to his first

12   date of custody in the United States in determining the

13   mandatory minimum of 60 months.  The Government's

14   understanding --

15          THE COURT:  I'm not sure he said that.

16          Is that what you said, Mr. De Marco?

17          MR. DE MARCO:  Not in so many words, but I think --

18          THE COURT:  I thought you were saying that if I give

19   him the mandatory minimum of five years and he's already

20   served 59 months, he'd be out in a month just based on this

21   sentence, right?

22          MR. PILMAR:  That's not correct, your Honor, because

23   he only came into custody in this case in 2020.

24          THE COURT:  Okay.  Thank you.

25          MR. PILMAR:  So I just want to note that I don't

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

14

SENTENCE

1   believe legally that's correct, your Honor.

2           THE COURT:  So he's only going to get credit, unless

3   I give him special credit, for the time that he came in on

4   this charge.

5           MR. PILMAR:  Yes, your Honor.  The -- I don't

6   believe legally, in accounting for the five-year mandatory

7   minimum term of imprisonment, you can count the time of the

8   previous sentence, because that is on undischarged term of

9   imprisonment.  So the time credit starts from the date he was

10  arrested on this case, which was in early 2020, so he has

11  about 24 months of credit plus good time.

12          THE COURT:  We're now on the same page.

13          MR. PILMAR:  Thank you, your Honor.

14          And the second and last point I wanted to address

15  was Mr. De Marco mentioned about -- something about

16  cooperation agreement and the difficulty the defendant had in

17  custody.  There were rumors of a cooperation agreement in the

18  press, but the defendant did not plead to a cooperation

19  agreement here, as your Honor knows, just a regular plea

20  agreement.  I just want to make that clear.

21          THE COURT:  Let me ask you a question about that.

22  In describing the fact that the defendant is not a cooperator

23  and has not been given cooperator status, you note that one of

24  the reasons the Government didn't want to do that is because

25  it found the defendant not credible.  Now, usually when the

15

SENTENCE

1    Government declines to recognize someone as a cooperator, the

2    reason I get is they tried but their Information just wasn't

3    all that useful.

4             "Not credible" implies something else to me.  What

5    did you mean by that?

6             MR. DE MARCO:  Your Honor, can I answer part of that

7    question?

8             THE COURT:  After he does.

9             MR. DE MARCO:  Okay.

10            MR. PILMAR:  Can I confer with the defense, your

11   Honor?

12            THE COURT:  Sure.

13            MR. DE MARCO:  May we have a brief sidebar on the

14   issue?

15            THE COURT:  Yes.

16            (Continued on the next page.)

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



SIDEBAR CONFERENCE – SEALED



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SENTENCE

1          (In open court.)

2          THE COURT:  I'm finding that the sidebar discussion

3    that we just had must remain under seal with access to the

4    Government only.  The reason for that is that while the

5    defendant is definitely not a cooperator, he has not been

6    accepted by the Government as a cooperator, disclosure of what

7    we discussed at sidebar would disclose how the Government goes

8    about prosecuting cases like these, and I think there's a law

9    enforcement privilege that might compromise future Government

10   investigations if I were to disclose it.

11         I do want to emphasize that the defendant is not and

12   nothing I learned at sidebar suggests that he ever has

13   cooperated with the Government.

14         Okay.  Anything further?

15         MR. PILMAR:  Nothing further from the Government.

16   Thank you, your Honor.

17         THE COURT:  I've considered all of the sentencing

18   factors under the statutes, including the advisory guidelines.

19   I have to say that I was a little surprised that the

20   Government was limiting its request to 120 months.  It's not

21   that the mitigating factors that have been identified both by

22   the Government and the defense are not valid.  I think they

23   are valid.  But there's an argument to be made that those

24   factors would get the defendant down to the low end of the

25   guidelines, principally for the quantity-driven nature of

SENTENCE

1    those guidelines, as the Government suggested.  For whatever

2    reason, the Government didn't make that argument, and I think

3    the Government was right not to make that argument, because I

4    think the guidelines would be too much in light of the

5    mitigating factors that have been identified.

6            At the same time, I have to tell you, Mr. Reyes, the

7    request by Mr. De Marco, the notion of a time-served sentence,

8    is not sufficient to account for the magnitude of what you did

9    here.  That kind of sentence is for somebody who engaged in a

10   large-scale drug transaction.  It's not for somebody like you

11   that betrayed the trust and put the whole ability of Mexican

12   authorities to cooperate with American authorities in question

13   because of the position that you had.  It's a very aggravating

14   characteristic.

15           And I really think that standing alone, even though

16   I think the guidelines are too high, I would probably impose a

17   sentence of somewhere in the range of 180 months, 15 years,

18   maybe slightly more, maybe slightly less.  I'm not going do

19   that, because I think the identification of the mitigating

20   factors is accurate.  I do think the time you've served is

21   hard time at the MDC.

22           This is my second sentencing today.  I urge the

23   Government regularly -- you know, the BOP is under the

24   direction of the justice department.  I'm not blaming the

25   prosecutors here, but something's got to be done about that

SENTENCE

1  situation, and I think that Mr. Reyes is entitled to

2  recognition of the fact that it was so difficult there.

3          The fact that he missed his father's funeral, which

4  is very regrettable, and that he hasn't seen his children,

5  which is also regrettable, and will not see them for a while

6  longer under the sentence I'm going to impose, is a mitigating

7  factor, but it's not something overwhelming, because any

8  defendant that undertakes a serious crime like this puts his

9  family at risk.  And that's what you did, Mr. Reyes.  And I

10  think you know that's what you did by coming into this

11  conduct.

12          I'm also considering the fact that he has served

13  about 40 months for what would otherwise be -- actually, it

14  was longer than 40 months -- for what would otherwise be

15  relevant conduct in a slightly different context.  And while I

16  don't think he should get, as Mr. De Marco suggested, full

17  credit for that, it does warrant some adjustment, because the

18  conduct is related in a sense.

19          I also can't quite agree with you, Mr. De Marco, on

20  the extent of credit that Mr. Reyes ought to get for

21  voluntarily coming to the United States.  Yes, I think he gets

22  some credit for that, but I also think by that time the

23  writing was kind of on the wall, and it was a question of

24  which bad option did he want to choose.  I think he made the

25  right choice to own up, take responsibility for what he had

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

22

SENTENCE

1   done.  But it's not as if he had an epiphany, I think, where

2   he hadn't been found out and then decided I'm going to do this

3   even though I can get away with this forever if I didn't come

4   to the United States.

5           I'm also taking into account the fact that he's a

6   pretty strong character.  I'm taking that into account as a

7   mitigating factor.  I think his remorse here is genuine, and I

8   think he has really taken on the responsibility for what he's

9   done.  And I think that other than this terrible thing he did,

10  he's lived a pretty exemplary life and shown that he has a lot

11  on the ball.  One of the factors I have to consider is his

12  history and characteristics, and that all fits under there, as

13  well as some of the negative things that I said that also fit

14  under there.

15          In addition, I'm taking into account that he's

16  not -- he's far from the most physically impaired defendant

17  that I've sentenced, but he does have some medical

18  disabilities which, again, make it harder for him to serve

19  time than it would for someone who was entirely healthy.

20          Balancing out those reasons, I'm going to accept the

21  Government's recommendation.  I think the Government has come

22  out in the right place -- of course, I'm making that

23  determination independently -- that 120 months without credit

24  for the Illinois sentence but with credit for the time he

25  served here since January 20, 2020 -- I think January 24th --

SENTENCE

1   120 months is the right sentence on balance of all of these

2   various factors.

3          I appreciate that Mr. De Marco feels very strongly

4   about the risk of someone in defendant's position being in a

5   prison population.  The fact that he's been in the prison

6   population for this long suggests that to the extent the risk

7   exists -- and I'm not saying it doesn't -- it's been

8   successfully ameliorated either by the efforts of the BOP or,

9   as Mr. De Marco suggested, the defendant's own efforts, and I

10  have no reason to think that that won't continue.

11         So that's the sentence of the Court:  120 months

12  custody, mandatory four years supervised release, with only

13  one condition, which is that -- one special condition, which

14  that if he is removed or deported, as we expect he will be,

15  that he does not enter the country illegally again.

16         I will not impose a fine.  I have no reason to

17  believe he can afford it.  I will impose the $100 special

18  assessment.

19         In addition, there is a forfeiture order that I have

20  signed for the $290,000 that he received, and that forfeiture

21  order will be annexed to and become part of the judgment.

22         Anything further the Government thinks I need to

23  cover in this?

24         MR. PILMAR:  I would ask you to dismiss the open

25  counts with prejudice, your Honor.

24

SENTENCE

```
1              THE COURT:  That motion is granted.

2              Mr. Reyes --

3              MR. DE MARCO:  Your Honor, may I make one final

4    request?

5              THE COURT:  Sure.  Go ahead.

6              MR. DE MARCO:  Would your Honor consider

7    recommending designation in the southwest region of the BOP to

8    facilitate family visits --

9              THE COURT:  Yes.

10             MR. DE MARCO:  -- should the jails open up and they

11   be permitted?

12             THE COURT:  I don't have the power to order that,

13   obviously, but I will certainly recommend it to the BOP.  I

14   know that the defendant's family is important to him and

15   they -- and he to them, and I see no reason why he shouldn't

16   be as close as possible to facilitate family visits.

17             All right.  Mr. Reyes, by pleading guilty, you have

18   given up your right to appeal the conviction against you and

19   the proceedings leading up to it.  I believe under your plea

20   agreement you also waived your right to appeal the sentence

21   that I have just imposed.  Nevertheless, if you think there

22   was something fundamentally unfair about the proceedings

23   leading up to this or about the sentence I've imposed and you

24   want to try to appeal, you need to get filed what's known as a

25   notice of appeal.  That's a one-page piece of paper that
```

SENTENCE

1   simply announces that you are appealing with the Clerk of this

2   Court.  Mr. De Marco will undoubtedly file it for you if you

3   ask him.  You can certify to the Clerk of the Court that you

4   can't afford a lawyer, and the clerk will file it for you, or

5   you can just get a copy of the form for notice of appeal from

6   the MDC library and file it yourself.

7           But however and to whomever you delegate this task

8   to, if you want to try to appeal, it's your responsibility to

9   see to it that that notice of appeal is filed within 14 days.

10  Otherwise, you will have waived even the possibility of

11  raising anything on appeal.

12          Anything else?

13          MR. PILMAR:  Not from the Government, your Honor.

14          MR. DE MARCO:  No, your Honor.  Thank you.

15          THE COURT:  Thank you.  We are adjourned.

16          (Whereupon, the matter was concluded.)

17                  *    *    *    *    *

18  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

19

20  */s/ Rivka Teich*
    Rivka Teich, CSR RPR RMR FCRR

21  Official Court Reporter
    Eastern District of New York

22

23

24

25

# EXHIBIT 4

**(Judgment)**

AO 245B (Rev. 10/13/2021)    Judgment in a Criminal Case
                Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| | ) | |
| Ivan Reyes-Arzate | ) | Case Number:  20-cr-00030-BMC |
| | ) | USM Number:  51991-424 |
| | ) | |
| | ) | Mark Steven DeMarco, Esq. |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)  Count 1 of the Indictment

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 963; | International Cocaine Distribution Conspiracy | 11/30/2016 | 1 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  1 and 3        ☐ is  ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/9/2022
Date of Imposition of Judgment

Digitally signed by Brian M. Cogan
Signature of Judge

BRIAN M. COGAN  U.S.D.J.
Name and Title of Judge

2/11/2022
Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: Ivan Reyes-Arzate
CASE NUMBER: 20-cr-00030-BMC

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

120 Months

☑ The court makes the following recommendations to the Bureau of Prisons:

The defendant be designated to facility in the Southwest region to facilitate family visits.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

Judgment—Page  __3__  of  __7__

DEFENDANT:   Ivan Reyes-Arzate
CASE NUMBER:   20-cr-00030-BMC

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

 4 Years

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        ☑ The above drug testing condition is suspended, based on the court's determination that you
            pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                Sheet 3A — Supervised Release

Judgment—Page     4     of     7

DEFENDANT:  Ivan Reyes-Arzate
CASE NUMBER:  20-cr-00030-BMC

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk..
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature                                            Date                           

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT:  Ivan Reyes-Arzate
CASE NUMBER:  20-cr-00030-BMC

## SPECIAL CONDITIONS OF SUPERVISION

1. If removed or deported, the defendant can not re-enter the country without permission.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page   **6**   of   **7**

DEFENDANT: Ivan Reyes-Arzate
CASE NUMBER: 20-cr-00030-BMC

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the    ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Ivan Reyes-Arzate
CASE NUMBER:   20-cr-00030-BMC

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ ___100.00___ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
Special Assessment payable to the Clerk of Court,  225 Cadman Plaza East, Brooklyn, NY 11201

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

FR:CSK
F. #2019R01700/OCDETF#NY-NYE-876-Z

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA      <u>ORDER OF FORFEITURE</u>

     - against -           20 CR 30 (BMC)

IVAN REYES-ARZATE,

           Defendant.

– – – – – – – – – – – – – – – – X

       WHEREAS, on or about October 19, 2021, Ivan Reyes-Arzate (the "defendant"), entered a plea of guilty to the lesser included offense charged in Count One of the above-captioned Indictment, charging a violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii), and 959(d); and

       WHEREAS, pursuant to 21 U.S.C. §§ 853(a) and 970, the defendant has consented to the entry of a forfeiture money judgment in the amount of two hundred ninety thousand dollars and zero cents ($290,000.00) (the "Forfeiture Money Judgment"), as: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the defendant's violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii), and 959(d); (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the defendant's violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii), and 959(d); and/or (c) substitute assets, pursuant to 21 U.S.C. § 853(p).

       IT IS HEREBY ORDERED, ADJUDGED AND DECREED, on consent, by and between the United States and the defendant as follows:

1.      The defendant shall forfeit to the United States the full amount of the
Forfeiture Money Judgment, pursuant 21 U.S.C. §§ 853(a), 853(p) and 970.

2.      All payments made towards the Forfeiture Money Judgment shall be
made by a money order, or certified and/or official bank check, payable to U.S. Marshals
Service with the criminal docket number noted on the face of the instrument.  The defendant
shall cause said payment(s) to be sent by overnight mail delivery to Assistant United States
Attorney Claire S. Kedeshian, United States Attorney's Office, Eastern District of New
York, 271-A Cadman Plaza East, Brooklyn, New York 11201.

3.      If the defendant fails to pay any portion of the Forfeiture Money
Judgment, the defendant shall forfeit any other property of his up to the value of the
outstanding balance, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of
21 U.S.C. § 853(p)(1)(A)-(E) have been met.  Furthermore, pursuant to 21 U.S.C.
§ 853(p)(3), the defendant shall liquidate and repatriate to the United States from Mexico or
any other place outside the United States, any assets he has or may have any ownership right,
title, or interest in, in whole or in part, to satisfy the Forfeiture Money Judgment.

4.      Upon entry of this Order of Forfeiture ("Order"), the United States
Attorney General or his designee is authorized to conduct any proper discovery in
accordance with Fed. R. Crim. P. 32.2(b)(3) and (c).  The United States alone shall hold title
to the monies paid by the defendant to satisfy the Forfeiture Money Judgment following the
Court's entry of the judgment of conviction.

5.      The defendant shall fully assist the government in effectuating the
payment of the Forfeiture Money Judgment, by among other things, executing any
documents necessary to effectuate any transfer of title to the United States.  The defendant

shall not file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding.  The defendant shall not assist any person or entity to file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

6.     The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of the monies and/or properties forfeited hereunder, including notice set forth in an indictment or information.  In addition, the defendant knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of said monies and/or properties, and waives all constitutional, legal and equitable defenses to the forfeiture of said monies and/or properties, including, but not limited to, any defenses based on principles of double jeopardy, the *Ex Post Facto* clause of the Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

7.     The entry and payment of the Forfeiture Money Judgment is not to be considered a payment of a fine, penalty, restitution loss amount or a payment of any income taxes that may be due, and shall survive bankruptcy.

8.     Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Order shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and included in the judgment of conviction.  This Order shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).  At that time, the monies

---

and/or properties paid toward the Forfeiture Money Judgment shall be forfeited to the United

States for disposition in accordance with the law.

      9.     This Order shall be binding upon the defendant and the successors,

administrators, heirs, assigns and transferees of the defendant, and shall survive the

bankruptcy of any of them.

      10.    This Order shall be final and binding only upon the Court's "so

ordering" of the Order.

      11.    The Court shall retain jurisdiction over this action to enforce

compliance with the terms of this Order and to amend it as necessary, pursuant to Fed. R.

Crim. P. 32.2(e).

      12.    The Clerk of the Court is directed to send, by inter-office mail, three (3)

certified copies of this executed Order to the United States Attorney's Office, Eastern

District of New York, Attn: FSA Law Clerk Joshua Lahijani, 271-A Cadman Plaza East,

Brooklyn, New York 11201.

Dated:   Brooklyn, New York
        December 29
        _____, 2021

                 SO ORDERED:

                 Digitally signed by Brian M. Cogan
                 _____
                 HONORABLE BRIAN M. COGAN
                 UNITED STATES DISTRICT JUDGE
                 EASTERN DISTRICT OF NEW YORK