# 22-320

*To Be Argued By*:
PHILIP N. PILMAR

---

# United States Court of Appeals

## For the Second Circuit

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

IVAN REYES-ARZATE,

*Defendant-Appellant.*

---

**On Appeal From The United States District Court
For The Eastern District of New York**

---

## BRIEF FOR THE UNITED STATES

---

BREON PEACE,
*United States Attorney,*
*Eastern District of New York*
*271-A Cadman Plaza East*
*Brooklyn, New York 11201*
*(718) 254-7000*

SUSAN CORKERY,
PHILIP N. PILMAR,
  *Assistant United States Attorneys,*
    *Of Counsel.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ....................................................................... 3

    I.    Reyes-Arzate's Offense Conduct ............................................. 3

    II.   The Indictment and Guilty Plea .............................................. 5

    III.  Sentencing ................................................................................ 6

SUMMARY OF ARGUMENT ................................................................. 7

ARGUMENT - REYES-ARZATE'S SENTENCE
           SHOULD BE AFFIRMED ................................................. 9

    I.    Applicable Law ....................................................................... 9

    II.   The District Court Did Not Err in
          Imposing the Standard Conditions of
          Supervised Release .............................................................. 11

          A.    The Court Properly Imposed the
               Standard Condition That Reyes-
               Arzate May Not Possess a Firearm ........................... 11

               1.    Bruen ................................................................. 12

               2.    The Court Did Not Commit
                     Error ................................................................. 17

               3.    Reyes-Arzate Cannot Establish
                     Plain Error ....................................................... 22

B. The Court Properly Imposed the Standard Condition That Reyes-Arzate May Be Required to Notify Others of the Risk He Poses .......................................24

 1. Applicable Law...................................................25

 2. Discussion ........................................................26

  a. Ripeness ...................................................26

  b. Not Error...................................................29

CONCLUSION ........................................................33

iii

# TABLE OF AUTHORITIES

Page(s)

## CASES

Campiti v. Garland,
  No. 3:22-CV-177 (AWT),
  2023 WL 143173 (D. Conn. Jan. 10, 2023) .................................... 18-19

District of Columbia v. Heller,
  554 U.S. 570 (2008) .......................................................... 12, 13, 15, 19

Grayned v. City of Rockford,
  408 U.S. 104 (1972) .............................................................. 30

Hamilton v. Pallozi,
  848 F.3d 614 (4th Cir. 2017) ................................................. 15

McDonald v. City of Chicago,
  561 U.S. 742 (2010) ......................................................... 12, 13

Medina v. Whitaker,
  913 F.3d 152 (D.C. Cir. 2019) ............................................. 15

New York State Rifle & Pistol Ass'n, Inc. v. Bruen,
  142 S. Ct. 2111 (2022) ................................................. passim

Range v. United States,
  69 F.4th 96 (3d Cir. 2023) ................................................... 18

United States v. Balon,
  384 F.3d 38 (2d Cir. 2004) ........................................... 26, 27

United States v. Birkedahl,
  973 F.3d 49 (2d Cir. 2020) ................................................ 28

United States v. Bogle,
  717 F.3d 281 (2d Cir. 2013) ........................................... 15, 21

United States v. Boles,
914 F.3d 95 (2d Cir. 2019) ............................................................25, 26

United States v. Bowers,
No. 22-6095,
2024 WL 366247 (6th Cir. Jan. 31, 2024)...........................................24

United States v. Cabot,
325 F.3d 384 (2d Cir. 2003) .................................................................30

United States v. Carrero,
No. 2:22-CR-00030,
2022 WL 9348792 (D. Utah Oct. 14, 2022)........................................18

United States v. Cruz,
49 F.4th 646 (1st Cir. 2022) .................................................................31

United States v. Daniel,
No. 20-CR-002,
2023 WL 7325930 (N.D. Ill. Nov. 7, 2023)..........................................18

United States v. Davis,
491 F. App'x 219 (2d Cir. 2012) ...........................................................23

United States v. Decker,
83 F. App'x 640 (2d Cir. 2021) .............................................................27

United States v. Frye,
826 F. App'x 19 (2d Cir. 2020) .............................................................29

United States v. Gallo,
20 F.3d 7 (1st Cir. 1994) .......................................................................31

United States v. Green,
618 F.3d 120 (2d Cir. 2010) .................................................................10

United States v. Harrison,
No. 3:22-CR-455,
2023 WL 4670957 (N.D.N.Y. July 20, 2023) ......................................17

United States v. Jackson,
69 F.4th 495 (8th Cir. 2023) ....................................................... 17, 18

United States v. Johnson,
446 F.3d 272 (2d Cir. 2006) ............................................................. 27

United States v. Jones,
88 F.4th 571 (5th Cir. 2023) ............................................................. 23

United States v. MacMillen,
544 F.3d 71 (2d Cir. 2008) ............................................................ 9, 30

United States v. Matta,
777 F.3d 116 (2d Cir. 2015) .............................................................. 10

United States v. McCane,
573 F.3d 1037 (10th Cir. 2009) ......................................................... 15

United States v. Napout,
963 F.3d 163 (2d Cir. 2020) .............................................................. 11

United States v. Olano,
507 U.S. 725 (1993) ........................................................................... 10

United States v. Parisi,
821 F.3d 343 (2d Cir. 2016) ................................................................ 9

United States v. Peterson,
248 F.3d 79 (2d Cir. 2019) ................................................................ 25

United States v. Ragonese,
47 F.4th 106 (2d Cir. 2022) ................................................... 11, 23, 32

United States v. Rasheed,
981 F.3d 187 (2d Cir. 2020) .............................................................. 29

United States v. Riley,
635 F. Supp. 3d 411 ................................................................... 20, 21

United States v. Rowson,
  22-CR-310,
  2023 WL 431037 (S.D.N.Y. Jan. 26, 2023) .......................................... 19

United States v. Rozier,
  598 F.3d 768 (11th Cir. 2010) .............................................................. 15

United States v. Sofsky,
  287 F.3d 122 (2d Cir. 2002) ................................................................. 10

United States v. Sternquist,
  No. 22-CR-473 (DLI),
  2023 WL 6066076 (E.D.N.Y. Sept. 15, 2023) ..................................... 23

United States v. Traficante,
  966 F.3d 99 (2d Cir. 2020) .............................................. 27, 28, 31 n.8

United States v. Verdugo-Urquidez,
  494 U.S. 259 (1990) .............................................................................. 13

United States v. Villafane-Lozada,
  819 F. App'x 58 (2d Cir. 2020) ............................................................ 29

United States v. Whab,
  355 F.3d 155 (2d Cir. 2004) ..................................................... 10, 11, 23

Vincent v. Garland,
  80 F.4th 1197 (10th Cir. 2023) ...................................................... 17, 20

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) ................................................................... 11, 17, 21

18 U.S.C. § 3583(d) ....................................................................................9

## STATE STATUTES

Ga. Code Ann. § 16-11-129(b)(2)(B) ................................................ 19 n.5

Haw. Rev. Stat. Ann. § 134-7 ............................................................20 n.5

La. Stat. Ann. § 40:1379.3(C)(6)........................................................20 n.5

Tex. Gov't Code Ann. § 411.172(a)(3)..............................................20 n.5

W. Va. Code Ann. § 61-7-4(b)(5).......................................................20 n.5

## GUIDELINES

U.S.S.G. § 5D1.3 .................................................................................9

## RULES

Fed. R. Crim. P. 52(b).......................................................................10

## OTHER AUTHORITIES

C. Sunstein, On Analogical Reasoning,
    106 Harv. L. Rev. 741 (1993) ...............................................................17

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 22-320

UNITED STATES OF AMERICA,

Appellee,

-against-

IVAN REYES-ARZATE,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR THE UNITED STATES

PRELIMINARY STATEMENT

Defendant-appellant Ivan Reyes-Arzate appeals from a judgment entered on February 15, 2022, in the United States District Court for the Eastern District of New York (Cogan, J)., convicting him, following a guilty plea pursuant to a plea agreement, of one count of international cocaine distribution conspiracy, in violation of 21 U.S.C. §§ 963, 960(b)(2)(B)(ii), and 959(d).

The district court sentenced Reyes-Arzate to 120 months' imprisonment, four years of supervised release with standard and special conditions, and a $100 special assessment. Reyes-Arzate did not object to the conditions of supervised release.

On appeal, Reyes-Arzate asserts for the first time that the district court committed error by imposing two of the standard conditions of supervised release: (1) that he not own or possess a firearm; and (2) that he notify others about the risk he poses to them if required to do so by his probation officer and the district court.[1] For the following reasons, this contention is without merit and the judgment of the district court should be affirmed.

---

[1] Reyes-Arzate also argues that the appellate waiver in his plea agreement did not bar his appeal. (Br. 6-8). The government concurs, and, on March 4, 2024, this Court granted us permission to withdraw a previously filed motion to dismiss the appeal based on the appeal waiver provision in the plea agreement.

STATEMENT OF FACTS

I.    Reyes-Arzate's Offense Conduct

Between 2003 and 2016, Reyes-Arzate was a Mexican Federal Police Officer assigned to the Mexican Sensitive Investigative Unit ("SIU"). The SIU was comprised of U.S.-vetted Mexican Federal Police personnel working with the United States government to combat narcotics trafficking, money laundering, and other criminal activities. Between 2008 and 2016, Reyes-Arzate was the SIU Commander, making him its highest-ranking officer. In that role, Reyes-Arzate was the principal point of contact for information sharing between United States and Mexican law enforcement personnel assigned to the SIU. He routinely had contact with and worked collaboratively with UnitedStates law enforcement agents in Mexico City to target drug traffickers working for Mexico's most dangerous cartels. (PSR ¶¶ 4-6).[2]

---

[2] References to "Br.," "A," "DE," and "PSR" are to Reyes-Arzate's supplemental brief, appendix, docket entries in 20-CR-30 (unless otherwise noted), and the pre-sentence investigation report, respectively. The PSR is filed under seal. Unless otherwise noted, all case quotations omit internal quotation marks and citations and all alterations are accepted.

4

During the relevant time, El Seguimiento 39 was a sophisticated drug trafficking organization with a vast cocaine distribution network stretching from Colombia to the United States, including New York City. The cartel obtained cocaine from sources of supply in South and Central America and used drug transportation cells in Central America to transport cocaine into Mexico via boats, aircraft, and commercial vehicles. From Mexico, the cartel's transportation network moved cocaine across the U.S.-Mexico border at ports of entry in Texas and California and then into cities throughout the United States. El Seguimiento 39 bribed police officers to further its drug trafficking activities. (PSR ¶¶ 7-8).

In 2016, in his role as SIU Commander, Reyes-Arzate became aware of a pending Drug Enforcement Administration ("DEA") investigation into El Seguimiento 39. Shortly thereafter, Reyes-Arzate personally met with leaders of the cartel, shared information with them about the United States investigation and accepted a $290,000 bribe in exchange for his assistance and the assistance of other corrupt officials. Reyes-Arzate shared sensitive information with the cartel regarding the United States investigation. (PSR ¶¶ 9, 27).

Reyes-Arzate was initially charged by the U.S. Attorney's Office for the Northern District of Illinois. On March 27, 2017, Reyes-Arzate made his initial appearance in the Northern District of Illinois on a complaint and arrest warrant issued on February 10, 2017. On July 27, 2017, a grand jury in the Northern District of Illinois returned an indictment charging Reyes-Arzate with obstruction of justice conspiracy and obstruction of justice, both in violation of 18 U.S.C. § 1512(c)(2). (See United States v. Reyes-Arzate, 17-CR-84 (N.D. Ill.) DE:6, 9, 40). In 2018, Reyes-Arzate pleaded nolo contendere to those charges. The district court sentenced him to 40 months' imprisonment. The charges in the Northern District of Illinois case also stemmed from Reyes-Arzate's corrupt activities on behalf of El Seguimiento 39. (Id. at DE:40).

## II.    The Indictment and Guilty Plea

On January 23, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging Reyes-Arzate with cocaine distribution conspiracy, cocaine importation conspiracy, and international cocaine distribution conspiracy. Reyes-Arzate was arrested prior to his release from federal custody in connection with his prosecution in the Northern District of Illinois. (DE:1).

6

On October 19, 2021, Reyes-Arzate pleaded guilty to the lesser included offense of Count One of the Indictment, pursuant to a plea agreement, before The Honorable Brian M. Cogan. (A:24-45). Pursuant to the terms of his plea agreement, Reyes-Arzate waived his right to appeal his conviction or sentence if he was sentenced to a term of imprisonment of 293 months or below. (A:16).

III.   Sentencing

On February 9, 2022, the district court sentenced Reyes-Arzate to 120 months' imprisonment and 4 years' supervised release. (A:65-66). The court imposed one special condition of release: that if Reyes-Arzate were to be removed or deported that he not illegally re-enter the United States. (A:66). At no time during the sentencing proceeding did Reyes-Arzate object to any aspect of the sentence, including the district court's conditions of supervised release.

## SUMMARY OF ARGUMENT

Reyes-Arzate argues that the district court's imposition of two of the standard conditions ofsupervised release was unconstitutional. First, Reyes-Arzate claims that the standard condition of supervised release that he not own or possess a firearm is unconstitutional and conflicts with the Second Amendment's presumptive right of individuals to bear arms. Second, Reyes-Arzate submits that the standard condition of release that mayrequire him to notify others of the risk he poses to them if the probation officer and the district court determines he poses a risk based on his criminal record, personal history and characteristics, and the nature and circumstances of the offense is unconstitutionally vague. Thus, according to Reyes-Arzate, the Court should vacate his sentence and remand for resentencing.[3]

---

[3] Reyes-Arzate makes inconsistent requests for relief. On the one hand, Reyes-Arzate requests that the sentence be "vacated and remanded for the district court to excise these terms from the judgment." (Br. 20). On the other hand, Reyes-Arzate requests that the proceeding be remanded to the district court and that the condition prohibiting the possession of firearms only be vacated "[i]f the government is unable to demonstrate a historical tradition denying adults who were convicted of a felony any rights under the Second Amendment." (Br. 15).

8

Reyes-Arzate's argument is without merit. The district court's imposition of these standard conditions of supervised release was proper and in accordance with binding precedent. And, with respect to the notification of risk provision, binding precedent of this Court also establishes that this claim is not ripe for review. Moreover, Reyes-Arzate did not object to any conditions of supervised release in district court and, thus, Reyes-Arzate cannot satisfy his high burden to show any alleged error was clear or obvious. Accordingly, the district court's sentence should be affirmed.

9

ARGUMENT

REYES-ARZATE'S SENTENCE SHOULD BE AFFIRMED

I.    Applicable Law

The Sentencing Guidelines list certain mandatory and discretionary conditions of supervised release.  See U.S.S.G. § 5D1.3. Some of the discretionary conditions are called "standard" while others are called "special."  Congress provided that any discretionary condition must (1) be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)"; (2) "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)"; and (3) be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)."   18 U.S.C. § 3583(d).

"A district court retains wide latitude in imposing conditions of supervised release, and [this Court] therefore review[s] a decision to impose a condition for abuse of discretion."  United States v. MacMillen, 544 F.3d 71, 74 (2d Cir. 2008); see also United States v. Parisi, 821 F.3d 343, 347 (2d Cir. 2016).

Where a party fails to raise an objection in the district court, review is only for plain error. See United States v. Green, 618 F.3d 120, 122 (2d Cir. 2010). This Court has observed that in the sentencing context, "there are circumstances that permit us to relax the otherwise rigorous standards of plain error review," United States v. Sofsky, 287 F.3d 122, 125 (2d Cir. 2002), because "the cost of correcting an unpreserved error is not as great as in the trial context," United States v. Matta, 777 F.3d 116, 121 (2d Cir. 2015) (internal quotation marks omitted). However, this Court has relaxed the standard primarily in "those rare cases in which the defendant lacked sufficient prior notice that a particular condition of supervised release might be imposed." Id.

As the Supreme Court explained in United States v. Olano, 507 U.S. 725 (1993), Fed. R. Crim. P. 52(b) authorizes appellate courts to consider unpreserved issues only where (1) there was an "error", or a "[d]eviation from a legal rule," that is (2) "clear" or "obvious" and that (3) affects the defendant's "substantial rights," meaning that it "affected the outcome of the district court proceedings." Id. at 732-34. "For an error to be plain, it must, at a minimum, be clear under current law." United States v. Whab, 355 F.3d 155, 158 (2d Cir. 2004). This Court "typically

will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." Id.; see also United States v. Ragonese, 47 F.4th 106, 113 (2d Cir. 2022) ("[The defendant] does not point to any binding authority to that effect, nor are we aware of any. For that reason alone, we find no plain error."); United States v. Napout, 963 F.3d 163, 184 (2d Cir. 2020) ("[B]ecause it is not clear under current law that [the statute] is unconstitutionally vague as applied to the appellants, the district court did not commit plain error in concluding that it is not.").

## II. The District Court Did Not Err in Imposing the Standard Conditions of Supervised Release

The district court did not commit error, let alone plain error, in imposing the standard conditions of supervised release. Accordingly, the court's sentence should be affirmed.

### A. The Court Properly Imposed the Standard Condition That Reyes-Arzate May Not Possess a Firearm

Reyes-Arzate first argues that the Supreme Court ruling in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), has rendered the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), unconstitutional, and thus, the supervised release condition

prohibiting felons from possessing firearms also is unconstitutional. He is wrong.

    1.   <u>Bruen</u>

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Like most rights, however, "the right secured by the Second Amendment is not unlimited." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 626 (2008). To identify categories of lawful restrictions, courts look to "the Second Amendment's plain text" and, if that text "covers an individual's conduct," to this "Nation's historical tradition of firearm regulation." <u>Bruen</u>, 142 S. Ct. at 2126. Under that text-and-history approach, prohibiting possession of firearms by felons is a permissible exercise of Congress's authority.

In its decisions in <u>Heller</u>, <u>McDonald v. City of Chicago</u>, 561 U.S. 742 (2010), and <u>Bruen</u>, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense[,]" as well as "an individual's right to carry a handgun for self-defense

outside the home." <u>Bruen</u>, 142 S. Ct. at 2122. The <u>Heller</u> Court found that the term "the people" as it is used in six other provisions of the Constitution "unambiguously refers to all members of the political community, not an unspecified subset[,]" and thus that "a strong presumption [exists] that the Second Amendment right is exercised individually and belongs to all Americans." <u>Heller,</u> 554 U.S. at 580-81; <u>see also</u> <u>United States v. Verdugo-Urquidez,</u> 494 U.S. 259, 265 (1990).

The Court, however, also held that the right secured by the Second Amendment is "not unlimited" and proceeded to explain that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." <u>Heller</u>, 554 U.S. at 626-27; <u>see also</u> <u>McDonald</u>, 561 U.S. at 786 (plurality of the Court, including <u>Heller</u>'s author, Justice Scalia, "repeat[ing the] assurances" set forth in <u>Heller</u> that the decision "did not cast doubt on [certain] longstanding regulatory measures").

In <u>Bruen</u>, the Supreme Court disagreed with some of the circuit courts' post-<u>Heller</u> use of a "two-step" framework that combines an analysis of history to establish that the "challenged law regulates activity falling outside the scope of the right as originally understood"

(step one) and a means-end analysis if the historical evidence is inconclusive in which they examine "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right" (step two).  Bruen, 142 S. Ct. at 2126-27.  The Bruen Court rejected only step two as inconsistent with Heller and McDonald.  Id. at 2127.

Notably, the Bruen Court's repeated characterization of the right guaranteed by the Second Amendment as belonging to "law-abiding citizens" is consistent with the carve-outs noted in Heller and McDonald. See Bruen, 142 S. Ct. at 2156 (finding New York's licensing requirement unconstitutional for "prevent[ing] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms" (emphasis added)); id. at 2150 (summarizing historical evidence of gun regulations and finding "none operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose" (emphasis added)).  Indeed, the entire Court agreed that the Second Amendment pertained to the rights of law-abiding citizenry. See Bruen, 142 S. Ct. at 2131 (majority), 2161 (Kavanaugh, J. concurring), 2157 (Alito, J. concurring), and 2189 (Breyer, J. dissenting).

Federal courts have thus recognized that although individuals convicted of a felony may be part of "the people," their Second Amendment rights are not co-extensive with those of "law-abiding citizens." See e.g., United States v. Bogle, 717 F.3d 281, 281-82 (2d Cir. 2013) (per curiam) ("Bogle relies on recent Supreme Court opinions [McDonald and Heller] developing a more expansive interpretation of the Amendment. But in both of these opinions, the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" (quoting Heller, 554 U.S. at 626 (2008))); Medina v. Whitaker, 913 F.3d 152, 160 (D.C. Cir. 2019) (felons "are not among those entitled to possess arms"); Hamilton v. Pallozi, 848 F.3d 614, 626 (4th Cir. 2017) ("[W]e simply hold that conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment[.]"); United States v. Rozier, 598 F.3d 768, 771 (11th Cir. 2010) (felons as a class fall outside the scope of the Second Amendment); United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009) (same).

When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." <u>Bruen</u>, 142 S. Ct. at 2129-30. Under <u>Bruen</u>, courts must engage in "analogical reasoning" to compare historical regulations with "how and why the [modern] regulations burden a law-abiding citizen's right to armed self-defense." <u>Id.</u> at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical <u>analogue</u>, not a historical <u>twin</u>." <u>Id.</u> (emphasis in original).

The government may justify a challenged restriction by showing "that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." <u>Bruen</u>, 142 S. Ct. at 2127. Courts may "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation" by assessing "whether the two regulations are 'relevantly

17

similar.'" Id. at 2132 (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). In doing so, courts should then examine "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2133.

2.    The Court Did Not Commit Error

Post-Bruen, the majority of courts have upheld the constitutionality of the federal crime of felon in possession embodied in 18 U.S.C. § 922(g)(1).[4] See United States v. Jackson, 69 F.4th 495, 501-02 (8th Cir. 2023) (upholding § 922(g)(1) as "consistent with the Nation's historical tradition of firearm regulation" and rejecting an as-applied challenge from a convicted, non-violent felon); Vincent v. Garland, 80 F.4th 1197, 1202 (10th Cir. 2023) (upholding "the constitutionality of the federal ban for any convicted felon's possession of a firearm." (emphasis in original)); United States v. Harrison, No. 3:22-CR-455, 2023 WL 4670957, at *6 (N.D.N.Y. July 20, 2023) ("multiple circuits have already considered and rejected the kind of constitutional challenge advanced by the defendant.  So too have about 140 district courts."); but

---

[4]      The issue is pending before this Court in earlier-filed cases, including United States v. Thawney, No. 22-1399.

see <u>Range v. United States</u>, 69 F.4th 96, 98-99 (3d Cir. 2023) (individual without a history of committing violent or serious crimes and convicted for lying on a food stamp application cannot be permanently banned from owning a firearm); <u>United States v. Daniel</u>, No. 20-CR-002, 2023 WL 7325930, at *11 (N.D. Ill. Nov. 7, 2023) (finding § 922(g)(1) is unconstitutional).

For example, in <u>Jackson</u>, the Eighth Circuit Court of Appeals reviewed the historical record and determined that "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." 69 F.4th at 504; <u>see also</u> <u>United States v. Carrero</u>, No. 2:22-CR-00030, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022) (after examining "relevantly-similar historical analogues" from the time period close to the Founding, the court held that "felons were not considered within the common law right to arms by the Founders, that the Founders did not intend to confer this right upon felons, and that firearm regulations forbidding those convicted of crimes from having firearms is consistent with understandings held by early Americans who adopted the Constitution."); <u>Campiti v. Garland</u>, No. 3:22-CV-177 (AWT), 2023

WL 143173, at *3 (D. Conn. Jan. 10, 2023) ("The felon-in-possession ban the plaintiff challenges is consistent with our historical tradition of firearm regulations."); United States v. Rowson, 22-CR-310 PAE, 2023 WL 431037, at *21 (S.D.N.Y. Jan. 26, 2023) (analyzing Bruen and historical precedents and determining that 18 U.S.C. § 922(n) is constitutional; court noted the historical precedent "of laws of disarming persons perceived as dangerous").

Indeed, Bruen reinforced that conclusion, as it approved "shall-issue" regimes that "require applicants to undergo a background check or pass a firearms safety course." 142 S. Ct. at 2138 n.9; see also id. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible"). In reaching this result, the Court had no need to analyze the history of shall-issue licensing regimes. Instead, it explained that those regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" Id. at 2138 n.9 (majority opinion) (quoting Heller, 554 U.S. at 635).[5] That

---

[5]     Indeed, many of the "shall issue" regimes approved of by Bruen independently prohibit the issuance of licenses to felons regardless

reasoning reinforces that § 922(g)(1), which likewise aims to ensure that "those bearing arms" are "law-abiding, responsible citizens," accords with the Second Amendment. Id.; see also Vincent, 80 F.4th at 1201-02 (10th Cir. 2023) ("Bruen apparently approved the constitutionality of regulations requiring criminal background checks before applicants could get gun permits. . . . [T]he [Bruen] Court added that it wasn't questioning the constitutionality of 'shall-issue' licensing regimes.").

Our Nation's history demonstrates a longstanding historical tradition to exclude those convicted of a crime from the right to vote, hold public office or serve on a jury, all of which are political rights as is the Second Amendment's right. See, e.g., United States v. Riley, 635 F. Supp.

---

of the nature of the felony. See, e.g., Ga. Code Ann. § 16-11-129(b)(2)(B) (prohibiting issuance of weapons license to "[a]ny person who has been convicted of a felony"); Haw. Rev. Stat. Ann. § 134-7 ("No person who . . . has been convicted in this State or elsewhere of having committed a felony . . . shall own, possess, or control any firearm"); La. Stat. Ann. § 40:1379.3(C)(6) (requiring that applicant "[n]ot be ineligible to possess a firearm by virtue of having been convicted of a felony"); 18 Pa. Const. Stat. Ann. § 6109(e)(1)(viii) (license shall not be issued to "individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year"); Tex. Gov't Code Ann. § 411.172(a)(3) (applicant must be person who "has not been convicted of a felony"); W. Va. Code Ann. § 61-7-4(b)(5) (license requires attestation that "the applicant has not been convicted of a felony").

3d 411, 425 4 (E.D. Va. Oct. 13, 2022). "Therefore, it would seem strange that the Founders considered the right to bear and keep arms somehow less prone to restriction than the right to cast a ballot," especially when those two rights "are historically closely knit." Id. The court of appeals decisions discussed above, including this Court's decision in Bogle, have not been overtaken by Bruen. This Court should again affirm that § 922(g)(1), which affects only those who are not law-abiding, "is a constitutional restriction." Bogle, 717 F.3d at 281-82.

Accordingly, the supervised release condition prohibiting Reyes-Arzate from owning or possessing a firearm is not unconstitutional.

Reyes-Arzate finally argues that, even if 18 U.S.C. § 922(g)(1) is not facially unconstitutional, the statute and supervised release condition are unconstitutional as applied to him because: (1) his involvement in the drug distribution conspiracy lasted only three months in 2016; (2) he was a law-enforcement officer at the time of his offense; (3) his offense was non-violent; and (4) he has no other prior convictions. (Br. 14). Reyes-Arzate is mistaken. Unlike the defendant in Range, Reyes-Arzate was a high-ranking law enforcement officer in Mexico who

took a significant cash bribe to provide sensitive information regarding a United States investigation into a cartel to help that drug cartel import massive amounts of cocaine into the United States. Thus, even if there may be some felons who can possess firearms, certainly a defendant convicted of international cocaine distribution conspiracy for accepting a $290,000 bribe to leak sensitive United States information to help a Mexican drug cartel is not one of them.

### 3.   Reyes-Arzate Cannot Establish Plain Error

Even assuming that the district court's imposition of the standard condition of release was error (which it was not), Reyes-Arzate cannot meet his burden to establish plain error because any such error was not clear or obvious.[6]

As discussed above, although there is currently a circuit split regarding the constitutionality of § 922(g)(1), the vast majority of courts

---

[6]      Reyes-Arzate claims that this Court should review the district court's decision for abuse of discretion and review any issues of law de novo. (Br. 8-9.)   Reyes-Arzate completely omits that this standard of review is only for preserved challenges.   Because Reyes-Arzate did not object to the imposition of supervised release or any of its conditions (as he admits, see Br. 10), this Court may only vacate the sentence if the district court committed plain error.   See supra, pp. 9-11.

have held that laws prohibiting felons from possessing firearms are constitutional. See, e.g., United States v. Sternquist, No. 22-CR-473 (DLI), 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023) ("While the Second Circuit has not spoken on the issue yet, multiple other circuits already have considered and rejected Bruen challenges to § 922(g)(1) and so too have about 140 district courts."). Because the district court's imposition of the standard condition of release followed the practice of most courts, Reyes-Arzate cannot demonstrate that any error by the district court was "clear" or "obvious." See United States v. Davis, 491 F. App'x 219, 224 (2d Cir. 2012) (defendant cannot "demonstrate plain error when there is a circuit split"); Whab, 355 F.3d at 158 ("Certainly, an error cannot be deemed 'plain,' in the absence of binding precedent, where there is a genuine dispute among the other circuits."); see also Ragonese, 47 F.4th at 113 ("[The defendant] does not point to any binding authority to that effect, nor are we aware of any. For that reason alone, we find no plain error.").

Indeed, at least two courts of appeal have held that finding § 922(g)(1) constitutional was not plain error because of the uncertainty in the law. See United States v. Jones, 88 F.4th 571, 574 (5th Cir. 2023)

("Given the absence of binding precedent holding that § 922(g)(1) is unconstitutional, and that it is unclear that <u>Bruen</u> dictates such a result," it is not "clear or obvious" error to accept a guilty plea to § 922(g)(1)); <u>United States v. Bowers</u>, No. 22-6095, 2024 WL 366247, at *3 (6th Cir. Jan. 31, 2024) ("[T]he circuit courts that have addressed § 922(g)(1)'s constitutionality have come to different conclusions. . . .  Because it is not 'clear or obvious' that § 922(g)(1) is unconstitutional in light of <u>Bruen</u>, Bowers has not shown that his conviction constituted plain error.").

Accordingly, the district court's imposition of the standard condition of release regarding the ownership and possession of firearms should be affirmed.

B.   The Court Properly Imposed the Standard
      Condition That Reyes-Arzate May Be
      <u>Required to Notify Others of the Risk He Poses</u>

Reyes-Arzate also claims that the district court committed error in imposing the standard condition that he may be required to notify others of the risk he imposes to them as determined by his probation officer and the district court.  Reyes-Arzate's argument is both incorrect and not ripe.

1.    Applicable Law

The condition of supervised release at issue is the standard

condition promulgated under U.S.S.G. § 5D1.3(c)(12):

> If the probation officer determines that the
> defendant poses a risk to another person
> (including an organization), the probation officer
> may require the defendant to notify the person
> about the risk and the defendant shall comply with
> that instruction.   The probation officer may
> contact the person and confirm that the defendant
> has notified the person about the risk.

In United States v. Boles, 914 F.3d 95 (2d Cir. 2019), this

Court rejected this notification-of-risk condition.  This Court determined

that the condition of supervised release gave the probation officer

"unfettered discretion" with respect to the notification requirement and

was "largely indistinguishable" from the condition it previously struck

down in United States v. Peterson, 248 F.3d 79 (2d Cir. 2019), where it

had held that "the district court must determine, rather than leaving to

the discretion of the probation officer, whether such notification is

required[.]"  Id. at 112.

Following this Court's decision in Boles, on February 10, 2021,

Chief United States District Judge for the Eastern District of New York

26

Margo K. Brodie issued Administrative Order No. 2021-03. Judge Brodie's order acknowledged that the previous standard condition used in the Eastern District of New York was found in <u>Boles</u> to "impermissibly accord[] too much discretion to the probation officer" and ordered that the court's "Judgment in a Criminal Case" form be modified to incorporate a new standard third-party risk condition:

> If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

The district court imposed this same condition.

    2.   <u>Discussion</u>

        a.   <u>Ripeness</u>

As an initial matter, Reyes-Arzate's claim that the notification of risk condition is unconstitutionally vague is unripe.

"The ripeness doctrine prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may

never occur." United States v. Balon, 384 F.3d 38, 46 (2d Cir. 2004). "In addressing any and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties." Id.; see also United States v. Johnson, 446 F.3d 272, 279 (2d Cir. 2006) ("Generally, a challenge lacks ripeness if it concerns abstract regulations or if it presents issues that might never arise.").

Reyes-Arzate admits that this Court has previously held that challenges to this notification of risk provision are unripe. He claims that this Court has only made this determination in one unpublished opinion, United States v. Decker, 838 F. App'x 640 (2d Cir. 2021), and that this unpublished decision cannot be followed as binding precedent. (Br. 19-20.)[7] Notably, Reyes-Arzate mistakenly ignores this Court's published decision in United States v. Traficante, 966 F.3d 99 (2d Cir. 2020), which is directly on point. In Traficante, the defendant claimed that the

---

[7]    Reyes-Arzate lists the volume number of this decision incorrectly.

identical notification of risk provision was unconstitutionally vague. This Court found that, "[a]lthough Traficante's vagueness challenge clearly raises a question of law, the inquiry, at this point, is surely just an abstraction." Id. at 106. This Court further explained that "while it could be argued that the standing order contemplates vesting the probation officer with a degree of discretion that is inconsistent with our holding in Boles, such a challenge would likewise be unripe, since the ostensibly improper delegation may never actually occur." Id. This Court concluded, "chances are that, by the time the court makes a finding that Traficante poses a risk of committing further crimes against another person or organization, and directs him to provide notice specifically to the at-risk person or entity – thereby imposing an enlarged condition – the condition will no longer be vague at all." Id. For these reasons, this Court declined to reach the defendant's vagueness challenge.

Furthermore, numerous other published and unpublished decisions of this Court following Traficante adhere to this position. See e.g. United States v. Birkedahl, 973 F.3d 49, 57 (2d Cir. 2020) ("As we explained in Traficante, any allegedly improper delegation is conditioned on the district court finding, during Birkedahl's term of supervised

release, that he poses a risk of committing further crimes against another person – a contingency that may never occur. Accordingly, this issue is not ripe for review, and therefore provides no basis for overturning Birkedahl's sentence."); <u>United States v. Frye</u>, 826 F. App'x 19, 25 (2d Cir. 2020) ("We . . . conclude that Frye's challenge to the standing order, as in <u>Traficante</u>, is not ripe."); <u>United States v. Rasheed</u>, 981 F.3d 187, 199-200 (2d Cir. 2020) (argument that notification of risk condition continues to violate <u>Boles</u> "is not yet ripe for review" and "is foreclosed by a number of recent decisions in which we have addressed the . . . modified standing order"); <u>United States v. Villafane-Lozada</u>, 819 F. App'x 58, 60 (2d Cir. 2020) ("Villafane-Lozada challenges the same condition that was at issue in <u>Traficante</u> and raises largely the same arguments we rejected there. Accordingly, our holding in that case governs, and Villafane-Lozada's claim must be dismissed.").

       b.   <u>Not Error</u>

       Even if the Court concludes that the issue is ripe for review, the notification condition as written is clear and specific and provides that the decision-making authority rests with the district court, not the probation officer. Due process requires that the conditions of supervised

release be sufficiently clear to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." United States v. Cabot, 325 F.3d 384, 385 (2d Cir. 2003) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). "But conditions of supervised release need not be cast in letters six feet high, or describe every possible permutation, or spell out every last, self-evident detail." MacMillen, 544 F.3d at 76. Here, the circumstances under which the notification requirement will be imposed ("based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense"), the decision maker ("the court"), the person affected ("you"), the nature of the risk (that "of committing further crimes"), and the party to be notified ("another person" or organization to whom you pose a risk of reoffending), are clear.

Reyes-Arzate argues that the condition is unconstitutionally vague because it "does not specify the type of risks about which the probation officer may seek a court order that Reyes-Arzate must issue warnings" and "whether the notification of risk condition is reasonably related" to Reyes-Arzate's personal characteristics and the purposes of sentencing. (Br. 18).

For example, according to Reyes-Arzate, there is a "looming threat . . . that a probation officer might seek court intervention with anything from a risk of passing a cold to a risk of the commission of violence." (Br. 19). But conditions of probation must be read "in a commonsense way." United States v. Gallo, 20 F.3d 7, 12 (1st Cir. 1994). The standard condition states that the risk is based upon Reyes-Arzate's "criminal record," "personal history and characteristics," and "the nature and circumstances" of his offense, not, as Reyes-Arzate claims, that he could be contagious with a virus. See United States v. Cruz, 49 F.4th 646, 654 (1st Cir. 2022) ("Standard Condition 12's context makes clear that the 'risk' is defined as that posed by appellants' criminal record."). Because the risk condition defines the factors that the probation officer and the court must consider, it is not unconstitutionally vague.[8]

---

[8] Reyes-Arzate argues it is "quite difficult" to determine what types of risks should be prevented. (Br. 18). This is precisely why this Court in Traficante held that determination on this issue was not ripe and "by the time the court makes a finding that Traficante poses a risk of committing further crimes against another person or organization, and directs him to provide notice specifically to the at-risk person or entity – thereby imposing an enlarged condition – the condition will no longer be

Finally, even if the Court finds that the district court committed error, that error was not clear or obvious.[9]  The district court imposed the same standard condition of release that is imposed by default in the judgment in every criminal case.  The condition was not the one rejected by this Court in Boles, but a modified condition designed by Chief Judge Brodie to follow this Court's precedents.  Accordingly, even if this Court has reservations about the new standard condition, it could not have been "clear" or "obvious" to the district court that imposing this condition was error.  See Ragonese, 47 F.4th at 113 ("[The defendant] does not point to any binding authority to that effect, nor are we aware of any.  For that reason alone, we find no plain error.").

---

vague at all."  966 F.3d at 106 (2d Cir. 2020).  This Court should make the same determination in this case.

[9]     Again, Reyes-Arzate incorrectly claims that the standard of review is abuse of discretion and that this legal question should be reviewed de novo.  (Br. 16).  However, because Reyes-Arzate did not object at sentencing, this Court can only vacate the sentence if the district court committed plain error, meaning that the error was "clear" or "obvious."

33

<u>CONCLUSION</u>

For the reasons stated, the judgment of the district court should be affirmed.

Dated:     Brooklyn, New York
           April 3, 2024

                              Respectfully submitted,

                              BREON PEACE,
                              <u>United States Attorney</u>,
                              <u>Eastern District of New York</u>.

                    By:  _____/s/_____
                              PHILIP N. PILMAR
                              Assistant U.S. Attorney

SUSAN CORKERY,
PHILIP N. PILMAR,
<u>Assistant United States Attorneys</u>,
     (<u>Of Counsel</u>).

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 6,015 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:  Brooklyn, New York
        April 3, 2024

                              _____/s/_____
                              SUSAN CORKERY
                              Assistant U.S. Attorney